**LESMARK, INC., Appellant,**

v.

**Isabel C. PRYCE et al., Appellees.**

**Nos. 17739, 17740.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 10, 1964.

Decided April 9, 1964.

Mr. Fred C. Sacks, Washington, D. C., with whom Mr. Samuel Barker, Washington, D. C., was on the brief, for appellant.

Mr. Clarence G. Pechacek, Washington, D. C., with whom Mr. Joseph A. Rafferty, Jr., Washington, D. C., was on the brief, for appellees Pryce and Ash.

Mr. Justin L. Edgerton, Washington, D. C., with whom Mr. Charles E. Pledger, Jr., Washington, D. C., was on the brief, for appellees Charron.

Mr. Charles E. Channing, Jr., Washington, D. C., for appellee Dreyfuss.

Before BAZELON, Chief Judge, and FAHY and WASHINGTON, Circuit Judges.

BAZELON, Chief Judge:

Appellees Pryce and Ash owned buildings at 1917 and 1921 Eye Street, N.W., respectively. Appellees Charron, who owned the vacant land between these two structures, contracted with appellee Dreyfuss, an architect, and with appellant Lesmark, Inc., a contractor, to construct a building thereon. After Lesmark began excavation, the party walls of both adjoining buildings sank, causing damage to floors, ceilings, elevator equipment, and other walls in those buildings. Pryce and Ash filed suit against the Charrons, Lesmark, and Dreyfuss, alleging that the defendants had negligently removed earth adjacent to and directly under the party walls. The Charrons, denying negligence on their part, cross-claimed against Lesmark for indemnification against any judgments which might be rendered in the principal action, and for costs and attorneys' fees.[1]

The trial judge, sitting without a jury, found that Lesmark's negligence was a proximate cause of the damage to plaintiffs' properties, and that the Charrons "as owners * * * have a liability established in law." Judgments in favor of Pryce and Ash were awarded against the Charrons and Lesmark. Lesmark was held liable to the Charrons on the cross-claim for indemnification.

After the District Court denied Lesmark's motion for a new trial or, in the alternative, for remittitur, Lesmark filed a notice of appeal from the judgments against it. Thereafter the Charrons, who had not noted an appeal, satisfied the judgments against them when the District Court and this Court refused to stay execution of those judgments.

Pryce and Ash have moved to dismiss Lesmark's appeal against them as moot, since their claims against Lesmark were released by the Charrons' payment of the principal judgments. Pryce and Ash assert that Lesmark's rights will not be jeopardized by such a dismissal. We agree. Lesmark is not harmed by any error in the principal judgments unless that error is carried into the Charrons' judgment against Lesmark for indemnification. Since this judgment is appealed, we can adjust it if circumstances require.

In its appeal from the judgment in favor of the Charrons, Lesmark contends that the trial court erred (1) in holding the Charrons liable to the plaintiffs, and, therefore, in holding Lesmark liable over to the Charrons, (2) in computing plaintiffs' damages, and (3) in awarding attorneys' fees to the Charrons.

(1) We need not consider the liability *vel non* of the Charrons. Lesmark agreed to "hold harmless and indemnify the Owner [Charrons] of and from all claims, suits, actions, costs, counsel fees, expenses, damages, judgments or decrees" arising out of Lesmark's performance of the construction contract.[2] Since the District Court found upon ample evidence that Lesmark's negligence was the proximate cause of the injuries

---

1. The Charrons also cross-claimed against Dreyfuss. The trial court's judgment for Dreyfuss was not appealed.

   At trial Lesmark entered an oral cross-claim against Dreyfuss. The trial court's judgment for Dreyfuss was appealed, but this appeal was abandoned.

2. "Should any person or persons or property be damaged or injured * * *

by the contractor * * * in the course of the performance by them of this agreement, or otherwise resulting from any action or operation under this agreement, whether by negligence or otherwise, said contractor shall alone be liable, responsible and answerable therefor and does hereby agree * * * to hold harmless and indemnify the Owner * * *."

here, Lesmark must bear the ultimate liability to Pryce and Ash, whether or not the Charrons are also liable.[3]

■ (2) Lesmark contends, however, that the determination of plaintiffs' damages was erroneous and that its liability should be reduced accordingly. It claims that the Charrons should bear the difference because they failed to appeal the principal judgments.[4] We do not reach this claim since we think the determination of damages was not erroneous.

Lesmark challenges three items of damages. The first is the amount allowed for loss of rent. It claims that Pryce's premises were "restored to a habitable condition by January 1, 1960" and that no rent should be allowed after that date since Pryce "made no real effort to rent the premises." However, the parties had stipulated that the repairs "were completed by March 1, 1960," and the trial judge found that Pryce "made diligent efforts to obtain a tenant or tenants or a purchaser for said premises" until the building was sold on December 15, 1960. He therefore awarded $9,800 to Pryce for loss of rent for the period August 1, 1959, through December 15, 1960. We think the record supports these findings, and that the allowance of nine months to secure a tenant or purchaser was reasonable under the circumstances.

■ Next, Lesmark claims that the record does not support the award of $7,500 for permanent damage to Pryce. There was evidence of substantial damage to the building which could not be alleviated by repairs, including the adverse effects of an extended period of disuse and of the community's knowledge of the accident. A real estate expert testified that in his opinion the pre-accident value of the building was $80,000, based on a capitalization of rental income. One and a half years after the accident, when the building had been repaired as much as possible, it was sold for $67,500. This reflected a $12,500 differential in value. Subsequently the building was resold for $75,000, when partial occupancy and the first successful sale had neutralized significant elements of the permanent damage. The real estate expert testified that this post-accident resale of the repaired and tenanted building reinforced his estimate of $80,000 as the pre-accident value.[5] The trial judge fixed the pre-accident value at $75,000. Thus, he found a loss of $7,500 to Pryce. We cannot say that this conclusion is unsupported.

■ Finally, Lesmark says that in determining the amount of damages, the court failed to distinguish between expenditures "for repairs" to restore the premises to their prior condition and expenditures for enhancement beyond restoration. We find no support for this contention. On the contrary, the record shows that the court excluded certain

3. For discussion of liability in such circumstances in the absence of an express contract to indemnify, see Washington Gas Light Co. v. District of Columbia, 161 U.S. 316, 327-333, 16 S.Ct. 564, 40 L.Ed. 712 (1896); George's Radio, Inc. v. Capital Transit Co., 75 U.S.App.D.C. 187, 190, 126 F.2d 219, 222 (1942); Aetna Casualty and Surety Co. v. Porter, 181 F.Supp. 81 (D.D.C.1960) appeal dismissed by order (D.C.Cir. No. 15664, Oct. 11, 1960); Restatement, Restitution § 76, § 76 comment (b), § 96, § 162 (1937).

4. This claim involves such questions as, for example, whether the Charrons' payment of the judgments was akin to a "prudent settlement," see Moses-Ecco Co. v. Roscoe-Ajax Corp., 115 U.S.App.D.C. 366, 320 F.2d 685 (1963); Grant v. Lawrence, 79 Hun 565, 568, 29 N.Y.S.

901, 903 (Sup.Ct. 4th Dept. 1894); or whether their failure to appeal was due to some lack of initiative on Lesmark's part, see Bankers Trust Co. v. New Amsterdam Casualty Co., 72 F.2d 323 (8th Cir. 1934); cf. Tighe v. Maryland Casualty Co., 99 F.2d 727 (9th Cir. 1938), but see Rule 74, Fed.R.Civ.P.; or whether the Charrons were remiss in failing to take easy, formal steps to protect Lesmark's rights when they were under an obligation to do so, cf. Bankers Trust Co. v. New Amsterdam Casualty Co., supra.

5. He testified: "In the interim, they had obtained—they had been able to obtain partial tenancies for part of the building. The fact that someone had finally bought the building * * * and the fact that some of that fear and the fact that some of the tenancies involved are

expenditures because they exceeded the needs of restoration. For example, the court reduced a floor covering bill by over 35 per cent because asphalt tile was used to replace the damaged linoleum floor.

■ (3) We turn now to Lesmark's contention that the Charrons are not entitled to indemnification for counsel fees because their insurance carrier furnished the counsel who appeared for them and they "are neither obligated nor responsible for the fee." [6] We cannot agree. The fact that the Charrons carried liability insurance which covered the claims of Pryce and Ash did not relieve Lesmark of its obligation to indemify the Charrons against such claims, and Lesmark does not contend otherwise.[7] Similarly, it was not relieved of its liability for litigation expenses arising from those claims, which were also covered by insurance.[8] And the insurer's agreement to provide direct legal representation rather than reimbursement for attorneys' fees merely reflects an understandable preference of the insurer to control the litigation.[9]

The appeals from the judgments in favor of Pryce in No. 17739, and Ash in No. 17740 are dismissed. The remaining judgments are affirmed.

already obtained [by the time of the resale at $75,000] strengthens my opinion of the [pre-accident value of] $80,000, sir."

6. This assertion appears only in an affidavit in support of the motion for new trial.

Lesmark also complains of the amount of the fees allowed. However, Lesmark's counsel agreed that it was "fair and reasonable compensation if he is entitled to it."

7. See, e. g., Clements v. Rockefeller, 189 Misc. 889, 76 N.Y.S.2d 493 (Sup.Ct.N.Y. County 1947), affirmed, 276 App.Div. 895, 94 N.Y.S.2d 820 (Sup.Ct., App.Div. 1st Dept. 1950). The indemnitor is not relieved from liability either on the theory that the insurer is entitled to reimbursement out of the indemnitee's recovery, see Busch & Latta Paint Co. v. Woermann Const. Co., 310 Mo. 419, 444–445, 276 S.W. 614, 621–622 (1925), or that "the

defendant should not benefit from a contract providently made and paid for by the plaintiff," Note, 63 Harv.L.Rev. 330, 332 (1949); see Note, 77 Harv.L.Rev. 741, 750–51 (1964). Cf. Hudson v. Lazarus, 95 U.S.App.D.C. 16, 18–20, 217 F.2d 344, 346–347 (1954); Rayfield v. Lawrence, 253 F.2d 209, 68 A.L.R.2d 868 (4th Cir. 1958). See generally, Case Note, 14 Ala.L.Rev. 148 (1961).

8. See General Acc., Fire & Life Assurance Corp. v. Smith & Oby Co., 272 F.2d 581, 586, 77 A.L.R.2d 1134 (6th Cir. 1959); List & Clark Const. Co. v. McGlone, 296 S.W.2d 910, 912 (Mo., Kansas City Ct.App.1956).

9. See Keeton, *Liability Insurance and Responsibility for Settlement*, 67 Harv.L. Rev. 1136, 1137 (1954); cf. Magoun v. Liberty Mutual Ins. Co., Mass.Adv.Sh. [1964] 123, 124 n. 2, 129, 195 N.E 2d 514.