**NORTH CENTRAL AIRLINES, INC., a Corporation, Appellant,**

v.

**The CITY OF ABERDEEN, SOUTH DA-KOTA, a Municipal Corporation, Appellee.**

**No. 18355.**

United States Court of Appeals
Eighth Circuit.

Dec. 7, 1966.

J. B. Shultz, of Woods Fuller, Shultz & Smith, Sioux Falls, S. D., for appellant and filed printed brief.

Chester A. Groseclose, Jr., of Voas, Richardson & Groseclose, Aberdeen, S. D., for appellee and filed printed brief.

Before MATTHES and LAY, Circuit Judges and HARPER, District Judge.

MATTHES, Circuit Judge.

This controversy presents the question whether the City of Aberdeen, South Dakota (Aberdeen) is entitled to indemnity from North Central Airlines, Inc. (North Central) for the amount expended by Aberdeen as third-party defendant in connection with its defense of a personal injury law suit. The district court, Honorable Axel J. Beck presiding, found in favor of Aberdeen, Wiseman v. North Central Airlines, Inc., 246 F.Supp. 775 (S.D.S.D.1965), and North Central has appealed.

The facts relating to the personal injury action are relevant to the issues presented by this appeal.

Maxine Wiseman, as plaintiff, sued North Central for the recovery of damages resulting from injuries sustained in a fall in the entryway to the terminal building of the Aberdeen Airport, after she had alighted from one of appellant's airplanes.[1]

While staunchly maintaining that it exercised no control over the passageway in question and that plaintiff's injuries were caused wholly by her own contributory negligence, North Central nevertheless impleaded Aberdeen, owner and lessor of the Aberdeen Airport, as third-party defendant under Rule 14(a), Fed. R.Civ.P.,[2] alleging that Aberdeen as lessor under the terms of its lease with North Central had the obligation of maintaining and keeping the terminal building in good repair, and that if there was any negligence that caused plaintiff's injuries, it was the negligence of Aberdeen and not North Central. North Central in an amended third-party complaint sought indemnity for any sums of money which might be adjudged against it in favor of the plaintiff.

The lease, which was attached as part of North Central's third-party complaint, disclosed that North Central had exclusive use of certain designated portions of the terminal building and non-exclusive use of all public space in and around the same building. Other provisions of the lease, pertinent to this controversy, provided in part:

"Article IX.

*　　*　　*　　*　　*　　*

Lessor [Aberdeen] agrees during the term of this agreement to maintain and keep the Terminal Building in good condition and repair, to provide and supply adequate heat, light, water and electricity for the public space and

---

1. Only the question of North Central's negligence was submitted to the jury. By stipulation of the parties the issue of indemnity was reserved to the court for decision on the same evidence introduced in the orginal action.

2. Both North Central and Aberdeen proceeded in a joint defense against plaintiff's claim and introduced evidence pertaining thereto. Aberdeen's joinder in defending the original action is permissible under Rule 14(a), supra, which provides in pertinent part:

"At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. * * * The person served with the summons and third-party complaint, hereinafter called the third-party defendant, shall make his defenses to the third-party plaintiff's claim as provided in Rule 12 and his counterclaims against the third-party plaintiff and cross-claims against other third-party defendants as provided in Rule 13. The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. * * *"

Lessee's [North Central's] exclusive space in the Terminal Building. The Lessee shall pay for all electricity used by Lessee.

## "Article X.
### Indemnity.

The Lessee agrees to indemnify and hold the Lessor harmless from and against all liabilities, judgments, cost, damages and expense which may accrue against, be charged to or recovered from Lessor by reason or on account of damage to the property of the Lessor or the property of, injury to or the death of any person arising from the Lessee's use and occupancy of and operations at the airport under any circumstances *except when caused by the Lessor's sole negligence or by the joint negligence of Lessor and any person other than the Lessee.*" [Emphasis added].

Aberdeen's answer was a general denial of the allegations of the third-party complaint. In addition it counterclaimed against North Central for attorney fees, costs and expenses under the indemnity agreement in the lease. The amount in controversy has been stipulated by the parties to be $1,973.06. North Central denied liability under the counterclaim, and contended that plaintiff's injuries were " * * * caused by the Lessor's sole negligence or by the joint negligence of Lessor [Aberdeen] and any person other than the Lessee [North Central]", thus bringing North Central within the exception to the indemnity agreement and exonerating it from any duty to indemnify Aberdeen under Article X of the lease.

After the jury's verdict and entry of judgment in favor of North Central and

against Mrs. Wiseman, the court resolved the indemnity issue in favor of Aberdeen. More specifically, it found that Aberdeen was not negligent and that plaintiff's own negligence was the sole proximate cause of the accident. The court also concluded that the liability of North Central to Aberdeen under the indemnity agreement arose from North Central's "use and occupancy of and operations at the airport under any circumstances" and did not fall within the exception to the indemnity agreement.

The principal issue to be resolved on this appeal is whether the district court's determination that North Central must assume Aberdeen's attorney fees, costs and expenses by virtue of the indemnity agreement is clearly erroneous within the meaning of Rule 52(a), Fed.R.Civ.P. We consider the district court's allocation of these expenses under the circumstances to be entirely proper.

The gist of Mrs. Wiseman's complaint in the original action was that North Central was negligent in its design or maintenance of the entryway, as a consequence of which, she fell and sustained certain injuries. Specifically, her claim of negligence was predicated upon the alleged faulty design and maintenance of a recessed rubber composition mat in the entryway, which projected approximately one-eighth of an inch above the level of the surrounding tile floor.[3] Mrs. Wiseman's testimony was to the effect that after she had opened one of the outer double glass doors to the entryway and moved across the threshold, she must have struck her foot against the outer portion of the rubber composition mat, thus causing her to tumble headlong against one of the inner glass doors of the same entrance.[4]

---

**3.** Although North Central contended that under the terms of its lease Aberdeen alone had the duty of keeping the entryway in good repair, plaintiff apparently proceeded solely against North Central on the theory that the special relationship between a carrier and its passengers gave rise to a non delegable duty on the part of North Central to maintain its passageway with due care, and that North Central could not supercede this duty by

a subsequent contractual arrangement with Aberdeen.

**4.** Plaintiff did not testify unequivocally that she fell as a result of contact with the composition mat. The printed record in narrative form revealed plaintiff's testimony to be as follows:

"As I entered the door, the passenger door, I was looking straight ahead. I stepped forward with my hand out-

In support of its non-liability under the indemnity agreement, North Central contends that the district court erred in finding as a fact no negligence on the part of Aberdeen in its design and maintenance of the entryway to the airport terminal. In short, North Central urges that a showing of an one-eighth inch difference between the level of the rubber composition mat and the adjoining tile floor constitutes as a matter of law negligence on the part of Aberdeen. We do not agree.

We find North Central's "slip and fall" cases inapposite in resolving the issues before us. In addition to presenting distinguishable factual patterns, they stand mainly for the proposition that testimony as to a variance in floor levels is sufficient only to deny a defendant's motion for a directed verdict and present a jury question. North Central's case of Haverkost v. Sears, Roebuck & Co., 193 S.W.2d 357 (Mo.App.1946), for example, which it strongly urges in support of its contention, militates against rather than for the position that it takes on appeal. In that case the plaintiff caught her foot and tripped on a metal strip which projected about one-eighth of an inch at the head of the stairway in defendant's store. The plaintiff there, unlike Mrs. Wiseman, testified unequivocally as to what caught her heel. The defendant contended the difference in level was so inconsequential that it could not constitute an actual defect. The Missouri Court of Appeals rejected this contention, stating:

> "We do not say that defendant was guilty of negligence *as a matter of law* in permitting the metal strip to project up above the surface of the step for as much as an eighth to a quarter of an inch, but merely hold that under all the facts, the question was one for the jury to determine. [Emphasis added].

> \* \* \* \* \* \*

> "The case on the facts was one for the jury; and the defendant's motion

for a directed verdict was therefore properly overruled."

To the same effect is our case of Sears, Roebuck and Co. v. Daniels, 299 F.2d 154 (8th Cir. 1962), where plaintiff slipped on a similiar rubber composition mat in the entryway of defendant's department store at Lincoln, Nebraska. Plaintiff's testimony, uncontradicted by defendant, revealed that the edge of the mat was worn and curled up about two inches from the level of the floor. We stated there only that a fact issue was presented and that the trial court had reached a permissible conclusion upon the basis of Nebraska law in denying defendant's motions for a directed verdict and for judgment n. o. v.

Appellant's other cases, we feel, present distinguishable factual characteristics and are therefore not controlling in this case.

We are not prepared to say under the circumstances of this case that as a matter of law Aberdeen was negligent in its design and maintenance of the rubber composition mat in question, thus relieving North Central of any duty to indemnify under the lease. With the exception of plaintiff's husband, and the plaintiff herself, who stated she did not see the mat, all the witnesses testified unequivocally that the mat was not in any fashion buckled or rumpled, and that they encountered no difficulty in passing over the mat. In the preceding three year period over 23,000 passengers had enplaned and deplaned at the Aberdeen Airport and had traversed over this same mat uneventfully.

On the other hand, other evidence disclosed that plaintiff was in a hurry as she approached the entryway with two bags in hand. Cross examination of the plaintiff further revealed that she wore green tinted glasses at the time of the accident, which were trifocals, and that she had astigmatism in her eyes. She testified unequivocally that she did not look to see if there was any floor mat in

stretched to take ahold of the handle of the next door I would have to open, and the foot that was supposed to go

forward seemed to come in contact with something immovable and I pitched forward."

the entryway but merely looked straight ahead, and she testified equivocally that she had slipped as a result of contact with the mat.[5]

On the basis of the record before us, we cannot fairly conclude that the trial court was clearly erroneous in finding that Aberdeen was not negligent in its maintenance of the mat in question and that plaintiff's own negligence was the sole proximate cause of the accident.

North Central also raises other subsidiary issues involving the construction of the indemnity agreement under Article X of the lease. It contends initially that the indemnity agreement is in essence one against "loss" or "damage" as opposed to one against "liability." If the indemnity agreement protects solely against "loss", South Dakota law concededly does not require payment by the indemnitor until the indemnitee sustains damage or loss by actual payment of money.[6] North Central thus argues that inasmuch as Aberdeen has actually paid out no amounts whatever in defense of the litigation,[7] it is in no position to demand indemnity under the lease agreement. The district court, however, construed the agreement as indemnifying also against liability, and held North Central responsible for the litigation expenses incurred by Aberdeen.

In support of its position North Central cites a solitary case from South Dakota, *Moriarty v. Tomlinson*, 58 S.D. 431, 235 N.W. 363 (1931). In that case the initial part of the indemnity agreement provided as follows:

"First. That we [the defendants] will at all times indemnify and keep indemnified the Company [the surety company], and hold and save it harmless from and against any and all demands, liabilities and expenses of whatsoever kind or nature, including counsel and attorney's fees, which it may at any time sustain or incur by reason of or in consequence of having executed such bonds, undertaking or renewals, or in connection with the enforcement of this kind of indemnity * * *."

The receiver of the surety company[8] contended that this language was conclusive in construing the contract as an agreement to indemnify against liability. Considering this limited portion of the indemnity agreement, the court agreed with the receiver and stated that "[t]he above provision, standing alone, would undoubtedly support appellant's position, but when read with other language of the agreement a different intention is apparent." The "other language" of the indemnity agreement provided in pertinent part that:

"* * * [the defendants] will pay over, reimburse and make good to the Company, its successors and assigns,

---

5. See testimony, footnote 1, *supra*.

6. South Dakota Code, tit. 31, § 3107 (1939), provides in pertinent part:
   "In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears:
   (1) Upon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable;
   (2) Upon an indemnity against claims or demands, or damages or costs, expressly, or in equivalent terms, the person indemnified is not entitled to recover without payment thereof;
   (3) An indemnity against claims or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good

faith, and in the exercise of reasonable discretion."

7. The record discloses that an insurance company, Maryland Casualty Company, furnished Aberdeen with a liability insurance policy, whereby it would defend through its own counsel any suits brought against the City on a liability matter. Counsel further stipulated that the City of Aberdeen would not be obligated to make any payments relative to this litigation, but that the same would be paid by the *Maryland Casualty Company*.

8. After the execution of the indemnity agreement in *Moriarty*, the company, Inter-State Surety Company, became insolvent and went into receivership. The appointed receiver sued under the indemnity agreement in behalf of the indemnitee-company.

all sums and amounts of money, which the Company or its representatives shall pay or cause to be paid or become liable to pay * * * such payment to be made to the Company as soon as it shall have paid out said sum or any part thereof."

In this case the indemnity agreement does not contain the "other language" which was decisive in the *Moriarty* case, but rather bears a close resemblance to the first part of that indemnity agreement, as set forth above. While mindful of the fact that the decision in each case must rest upon the construction of the particular agreement under consideration, we have frequently reiterated that as to doubtful issues of local law, "we go no further than to determine that the trial court has reached a permissible conclusion upon the basis of the law of his state." Sears, Roebuck and Co. v. Daniels, supra.

Our research has not disclosed any later pronouncements of the South Dakota Supreme Court which are relevant to the resolution of this controversy, and consequently in light of the court's language in Moriarty v. Tomlinson, supra, we believe the district court's conclusion to be an entirely permissible one.

■ In the alternative North Central argues that even if the indemnity agreement be interpreted as one against liability, Aberdeen still cannot recover inasmuch as it is under no obligation to pay attorney fees and expenses by reason of insurance coverage which it had obtained. The duty to indemnify, North Central contends, must be founded upon the specific liability or obligation of Aberdeen and not that of its insurance carrier. We reject North Central's argument and hold that Aberdeen's insurance coverage in no way affects the underlying obligation of North Central to indemnify. The fact that Aberdeen had contracted with an insurance carrier to protect itself from the same risk of loss as comprehended by North Central's indemnity obligation should not exonerate North Central from its duty to indemnify

according to agreement. Case law, we feel, squarely bears out this proposition.

In Safway Rental & Sales Co. v. Albina Engine & Machine Works, Inc., 343 F.2d 129 (10th Cir. 1965), the Tenth Circuit similarly faced the question of recovery of attorney fees and other litigation expenses incurred by an insurer of the indemnitee (the Albina Company). The indemnitor, Safway, argued that the expenses and attorney fees were obligations of Albina's insurer and not of Albina itself, and that therefore no right of subrogation to Albina's right of indemnity against Safway existed in behalf of the insurance company. While realizing that Albina was only "technically liable" for defending the action or paying any judgment, the Tenth Circuit nevertheless concluded that a cause of action under the implied indemnity agreement existed in favor of Albina and held that Albina's insurer was subrogated to Albina's right to recover any expenses incurred in defense of the suit. As to Safway's argument that Albina would never be individually liable for any expenses or any judgments rendered, the court merely reiterated the proposition that:

"the fact the insured (Albina) carried a liability policy should not relieve the negligent party of its obligation to indemnify the insured for the judgment or for fees and expenses arising from the original claim." 343 F.2d at 134.

This same issue was also presented in Lesmark, Inc. v. Pryce, 118 U.S.App.D.C. 194, 334 F.2d 942 (D.C. Cir. 1964). There the contractor, Lesmark, Inc., agreed to " 'hold harmless and indemnify the Owner (Charrons) of and from all claims, suits, actions, costs, counsel fees, expenses, damages, judgments or decrees' " arising out of Lesmark's performance of a construction contract. As the result of Lesmark's faulty excavation, the party walls of plaintiffs' adjoining buildings sank, causing extensive damage to the premises. Lesmark contended that the Charrons were not entitled to indemnification for counsel fees under the agreement since their insurance car-

rier furnished the counsel and assumed all obligation for attorney fees. The court stated, in response to this argument, that:

"[t]he fact that the Charrons carried liability insurance which covered the claims of Pryce and Ash (the plaintiffs) did not relieve Lesmark of its obligation to indemnify the Charrons against such claims, and Lesmark does not contend otherwise. Similarly it was not relieved of its liability for litigation expenses arising from those claims, which were also covered by insurance." 334 F.2d at 945.

North Central places great reliance upon the case of Peterson v. Roberts County, 31 S.D. 439, 141 N.W. 368 (1913), as establishing a rule contrary to that set forth in *Safway* and *Lesmark*. The *Peterson* decision turned on an entirely different factual situation and presented wholly unrelated factual issues. Nowhere in the case was there an issue raised as to an indemnitor's obligation under an indemnity agreement where the indemnitee has undertaken to procure insurance to avoid all risk of expense or liability. For these reasons we find it distinguishable from the case at hand and consequently not controlling.

Finding no error, we therefore affirm.