**ERICKSON TOOL COMPANY, Plaintiff,**

v.

**BALAS COLLET COMPANY, Defendant.**

**Civ. A. No. C 64–857.**

United States District Court
N. D. Ohio, E. D.

Feb. 28, 1967.

Memorandum July 31, 1967.

3. U. S. patent No. 3,035,845, ptf.'s Ex. 1, the patent in suit, was granted on May 22, 1962 to plaintiff as assignee of Milton L. Benjamin, and plaintiff has continuously been and still is the owner of said patent.

4. The complaint charged that defendant has infringed the patent in suit by making and selling collet chucks embodying the invention of claims 1, 3, 4, 6 and 7 of the patent in suit.

5. The answer denies infringement of the patent in suit and alleges that said patent is invalid.

6. Defendant's first counterclaim is for declaratory judgment of invalidity of patent in suit and its second counterclaim is for declaratory judgment of noninfringement of the patent in suit by defendant.

7. Federal jurisdiction exists because this action arises under the patent laws of the United States and jurisdiction conferred by 35 U.S.C. § 281 and 28 U.S. C. § 1338. The Court has jurisdiction over the parties and the subject matter, and no issue is presented as to venue.

8. At pre-trial conference the plaintiff withdrew the charge of infringement based on claims 1, 4, 6 and 7, and the trial was confined solely to dependent claim 3 which, in accordance with 35 U.S.C. § 112 shall be construed to include all of the limitations of the claim 1 which is incorporated by reference into said dependent claim 3.

Walter Maky, Oberlin, Maky & Donnelly, Cleveland, Ohio, Edward A. Haight, Haight, Simmons & Hofeldt, Chicago, Ill., John Kennedy Lynch, Conway & Lynch, Cleveland, Ohio, for plaintiff.

Frederic M. Bosworth and Paul S. Sessions, Bosworth, Sessions, Herrstrom & Knowles, Cleveland, Ohio, for defendant.

KALBFLEISCH, Chief Judge.

1. The plaintiff in this action is Erickson Tool Company, a corporation of Ohio, having a place of business at Solon, Ohio. Ptf.'s Ex. 15.

2. The defendant in this action is Balas Collet Company, successor to Balas Collet Manufacturing Company the original defendant in this action, a corporation of Ohio having a place of business at Cleveland, Ohio. Ptf.'s Ex. 15. Defendant, Balas Collet Company, is a wholly owned subsidiary of Warner & Swasey Co. of Cleveland, Ohio.

9. The Benjamin patent No. 3,035,845 in suit, ptf.'s Ex. 1, relates to a collet chuck, ptf.'s Ex. 16, adapted to grip a tool or work piece by a contractible collet. The chuck includes, as a first element, a shank adapted to be mounted in the spindle or turret of a metal working machine and having a tapered bore, as a second element, a contractible collet having a correspondingly tapered face adapted to engage the tapered bore in the shank, and as a third element, a nosepiece assembly which is removably connected to the collet by a snap ring and connected to the shank by threaded engagement therewith. Rotation of the

nose piece assembly in one direction will push the collet into the shank and effect gripping of the tool, and rotation in the opposite direction will pull the collet out of the shank to release its grip on the tool. The nose piece assembly of the patent comprises a nose piece having direct threaded engagement with the shank. It has two axially spaced apart radially inwardly extending flanges, one of which is the snap ring. Between these flanges are always retained a nose ring and an antifriction roller thrust bearing.

10. The collet chuck of the patent in suit is the same as the collet chuck of the prior Benjamin et al. patent No. 2,465,-837, deft.'s Ex. A, as exemplified also in plaintiff's so-called Bulldog chuck, with the sole exception that the nose piece assembly of the patent in suit contains a Torrington roller needle thrust bearing, deft.'s Exs. E, L, NNN, OOO and R, between the nose ring and the outer flange of the nose piece. Benjamin, Tr. 40, 41; Lutz, Tr. 294–296; and Cox, Tr. 430 and 431.

In respect to the pull or retracting of the collet from the shank when the nose piece is unscrewed from the shank, the collet chuck of the patent in suit is substantially the same as the collet chuck illustrated in the Benjamin et al '837 patent, deft.'s Ex. A, in structure, function, mode of operation and results. Deft.'s Ex. V, plaintiff's answer to defendant's interrogatory No. 38. The pull-out of the collet is effected in the chucks of the patent in suit and of the Benjamin '837 patent and the Bulldog in the same manner and regardless of the presence of any antifriction bearing at the front of the collet in the nose piece assembly. Benjamin, Tr. 76 and 77.

11. The combination of elements in the '837 patent and the Bulldog chuck, on the one hand, is old and is the same combination as the combination disclosed and claimed in the patent in suit, on the other hand, except for the presence of the Torrington bearing in the nose piece assembly of the patent in suit. Lutz, Tr. 251, 252 and 295. All the elements of this combination fit together and coact with one another in the same way, do the same work with the same mode of operation and perform the same functions in the patent in suit as in the '837 patent for the Bulldog chuck. Lutz, Tr. 294–297. There is no difference in the interaction between the collet and shank and between the nose piece assembly and collet because of the addition of the Torrington bearing except that which is occasioned by rolling contact. Lutz, Tr. 296. Except for differences in degree of results shown in deft.'s chart, Ex. VV, due to the presence or absence of the antifriction bearing, the results are the same, and there is no difference in function and mode of operation between the patent in suit combination claimed on the one hand, and the combination comprising the Benjamin '837 patent and the Bulldog chuck, on the other hand. Lutz, Tr. 294–297; Cox, Tr. 430 and 431; and Benjamin, Tr. 40, 41, 76, and 77. The addition of the roller bearing to the prior '837 patent and Bulldog chuck did not make or comprise a new combination.

12. Claim 3 of the patent in suit is drawn to the old combination of a shank, a collet, and a nose piece assembly. All of the elements and parts thereof recited in claim 3 of the patent in suit were old at the time of the alleged invention of the patent in suit.

13. The combination in a collet chuck, of a shank, a collet, and a nose piece assembly was old in the art at the time of the alleged invention of the patent in suit as evidenced by the Buhr patent No. 1,973,942, deft.'s Ex. EEE, the Chittenden patent No. 2,272,185, deft.'s Ex. V2, the Benjamin et al patent No. 2,465,837, deft.'s Ex. A, and the Hunsdorf patent No. 2,609,209, deft.'s Ex. H.

14. In respect to the push or forcing of the collet into the shank to effect gripping of the tool, the collet chuck of the patent in suit is substantially the same as the collet chuck illustrated in the Hunsdorf patent No. 2,539,218, deft.'s Ex. H, in structure, function, mode of operation and results. Deft.'s Ex. V, plaintiff's answers to defendant's inter-

rogatories Nos. 25, 26 and 28, and Benjamin, Tr. 75–77.

15. The antifriction roller thrust bearing of claim 3 of the patent in suit does not differ in function from the antifriction ball thrust bearing of the collet chuck of the Hunsdorf patent No. 2,529,-218. Deft.'s Ex. V, plaintiff's answer to defendant's interrogatory No. 26, and Benjamin, Tr. 69.

16. The results obtained by the antifriction roller thrust bearing of claim 3 of the patent in suit do not differ from the results obtained from the antifriction ball bearing of Hunsdorf patent No. 2,529,218 other than by such differences as may be ascribed to the differences between roller and ball bearings. Deft.'s Ex. V, plaintiff's answer to defendant's interrogatory No. 28, and Benjamin, Tr. 71–72.

17. Mr. Benjamin, as he admitted, Tr. 78 and 79, was not the first to employ any antifriction bearing in a nose piece assembly (comprising a nose piece, snap ring, nose ring and antifriction bearing like the patent in suit and Hunsdorf). He claimed merely that he was first to employ a roller bearing in such a nose piece assembly. Mr. Benjamin admitted that the results were the same except for the difference attributable to the differences between ball and roller bearings, Tr. 71, a difference which has been known for 50 years at least. Benjamin, Tr. 71 and 72.

18. In the push-pull collet chuck of the patent in suit, and as embodied in plaintiff's patented TG chuck, the nose piece is provided with a pair of flanges, one of which, through the roller thrust bearing and the nose ring, pushes (without twisting) the collet into the tapered bore of the shank, and the other of which engages a flange or lip of the collet to impart a pulling and twisting action on the collet thus to pull the collet out of the shank to enable removal of a tool for replacement or resharpening.

19. In the defendant's accused push-pull collet chuck the nose piece is provided with a flange which, through the roller thrust bearing and the nose ring, pushes (without twisting) the collet into the tapered bore of the shank, and which engages a flange or lip of the collet to impart a pulling and twisting action on the collet thus to pull the collet out of the shank to enable removal of a tool for replacement or resharpening.

20. Insofar as no-twist push action and twist-pull action on the collet is concerned, it is a matter of indifference whether the nose piece has two flanges as in the patent in suit, or whether the collet has two flanges as in the defendant's accused chuck, since in either event (1) a nose ring and a roller thrust bearing are interposed between one flange of the nose piece and one flange of the collet to impose a no-twist push action on the collet; and (2) a flange (the same one or another one) of the nose piece radially overlaps a flange or lip of the collet to impose a twist-pull action on the collet. In the patent in suit as exemplified by plaintiff's patented TG chuck and in the defendant's accused chuck, the turning of the nose piece in opposite directions effects the same results in the same way to accomplish no-twist push action and twist-pull action on the respective collets.

21. Antifriction roller thrust bearings as specifically defined in dependent claim 3 of the patent in suit were not originally conceived or invented by Milton L. Benjamin; Tr. 87, and answers to deft.'s interrogatory No. 112. Such roller thrust bearings were available for anyone's purchase and use prior to the earliest date claimed for the invention of the patent in suit. Deft.'s Ex. V, plaintiff's answer to defendant's interrogatory No. 112, deft.'s Ex. W, plaintiff's answer to defendant's request for admissions No. 16, and Benjamin, Tr. 47.

22. The specific antifriction roller thrust bearing with its retainer for holding the rollers radially as described in claim 3 of the patent in suit is the roller thrust bearing and retainer disclosed and claimed in the R. H. White patent No. 2,724,625, deft.'s Ex. R, dated November 22, 1955, and assigned to the Torrington Company. Benjamin, Tr. 86, 87.

23. The direct rolling engagement of a plurality of radially extending cylindrical rollers with the plane faces of the nose ring and flange on the nose piece that is specified in claim 3 of the patent in suit was taught in the Torrington Company's advertisements that appeared in the July 12, 1956 and August 8, 1957 issues of "Machine Design" magazine. Deft.'s Exs. E and L, and Benjamin, Tr. 90–92.

24. It was well-known long before the date of the alleged invention of the patent in suit that friction was commonly reduced by lubrication of plain bearings, Cox, Tr. 473; that further reduction in friction was obtained by use of an antifriction bearing, Benjamin, Tr. 496; and particularly by antifriction roller bearings, Cox, Tr. 390–392, as illustrated in the charts in "Elementary Practical Mechanics," 1916 Edition, deft.'s Ex. YY.

25. Prior to the date of the alleged invention of the patent in suit, the use of cylindrical roller thrust bearings made and provided by the Torrington Company, which were identical, except perhaps for diametric size, with the roller thrust bearing described in claim 3 of the patent in suit, had been widely advertised and promoted by Torrington, and had been used by persons having ordinary skill in the same and analagous arts for the same purposes and for the same reasons, and did the same work in the same way and performed the same function, and achieved the same results as in the patent in suit.

26. The use of plain surface antifriction means in a collet chuck of great enough antifriction value to "prevent transmission of twisting forces to the collet as it is wedged into the shank" (patent in suit, col. 2, lines 13 and 14) was old at the time of the alleged invention of the patent in suit and fully disclosed in Mr. Benjamin's prior patent No. 2,358,300; deft.'s Ex. T; Benjamin, Tr. 146–150. Mr. Benjamin subscribed to and reaffirmed all the accomplishments of his old '300 patent in respect to reducing friction and preventing twisting the collet, and also in respect to obtaining concentricity of the tool and work piece as good or better than the patent in suit. Benjamin, Tr. 143 and 144.

27. Without any knowledge about any use or acquisition by Mr. Benjamin, or plaintiff, of the Torrington roller thrust bearing, or any other roller thrust bearing, for any purpose like or related to the subject matter of the patent in suit, Mr. George E. Tanker, acting in defendant's behalf before the issuance of the patent in suit, acquired and employed a Torrington roller thrust bearing, the same as the thrust bearing of the patent in suit, in and for his designing and making of a hand chuck for the defendant as shown in his drawing, deft.'s Ex. II, and in the physical device, Ex. LL; Tanker, Tr. 229–232; and contemporaneously Mr. Tanker made the first design of the accused device in which he also employed the same Torrington roller thrust bearing as shown in his sketch, deft.'s Ex. JJ, and as ultimately embraced in the accused device, deft.'s Ex. KK. Tanker, Tr. 232–235.

28. At and prior to the time of the alleged invention of the patent in suit the level of ordinary skill in the pertinent arts was such that the selection of a Torrington roller thrust bearing for the uses and purposes of the subject matter of the patent in suit would have been obvious to one having such ordinary skill. Paquin, Tr. 200–209, Benjamin, Tr. 44, 48, 52–60, 492–497, Cox, Tr. 431 and 432.

29. The introduction and use of the Torrington roller thrust bearing into the nose piece assembly of the prior Benjamin '837 patent Bulldog chuck, whereby to contrive the patent in suit collet chuck, was merely one more new use of the Torrington roller thrust bearing with the natural, advertised and known consequences thereof.

30. Defendant's accused collet chuck, pltf.'s paper Ex. 3 and deft.'s physical Ex. KK, comprises a shank having tapered bore at one end and being externally threaded at said end to receive a nut or nose piece. A resiliently contractible collet having a correspondingly

tapered face is adapted to be seated in the bore of the shank and is formed with a circumferential contractible groove adjacent its outer end. The nut or nose piece is supported on threads at the outer end of the shank and has a single radially inwardly extending flange which in the assembled device projects into the groove in the outer end of the collet. This collet groove had radially outwardly extending side walls, the face of the inner one of which is normal to the longitudinal axis of the collet and shank and comprises the thrust surface of the collet against which pressure is exerted by the nut to force the collet axially inwardly into the tapered bore of the shank and cause it to grip the tool or work to be held. A Torrington roller thrust bearing and a thrust washer are interposed between the flange on the nut and the said thrust surface of the collet to reduce friction between the nut and the collet when the nut is screwed onto the shank to force the collet inwardly into the tapered bore of the shank.

When the nut is screwed outwardly in respect to the shank the flange of the nut engages the outer side wall of the groove of the collet and pulls the collet out of the bore of the shank. When the collet is withdrawn from the shank it expands resiliently within the flange of the nut and retains the nut, washer and thrust bearing in the groove. Manual constriction of the collet releases the nut, washer and thrust bearing from association with the collet and from each other. The accused device comprises no nose piece assembly as described and claimed in the patent in suit, nor does the accused device employ any snap ring to maintain any such nose piece assembly in assembled condition when detached from the collet.

The accused device employs its patented spring type collet called Flexi-grip by defendant and covered by its U. S. patent No. 2,996,301, ptf.'s Ex. 25. It has a steeper angle of taper than taught in the patent in suit and is more easily pulled out of the bore of the shank of the chuck. While the accused device employs the same kind of Torrington needle roller thrust bearing that plaintiff uses in its patent in suit chuck, the internally threaded female nut of the accused device lends itself to a larger diameter Torrington bearing with more rollers than does the patent in suit device with its externally threaded male nut for a chuck of the same capacity. Cox, Tr. 441.

Defendant has also contemporaneously made and sold a second form of collet chuck which is substantially and essentially identical in all respects with the accused chuck except that it does not employ the Torrington roller thrust bearing of the accused chuck. This second chuck has been excused by plaintiff from its charge of infringement of the patent in suit and has been admitted by plaintiff to not embrace any alleged invention of any claim of the patent in suit. Plaintiff's admissions to defendant's requests Nos. 1 and 17.

31. Defendant's accused collet chuck is substantially the same as the collet chuck of the Perman patent No. 2,609,209, deft.'s Ex. C, in structure, except for the inclusion of the thrust washer and Torrington roller thrust bearing between the nose piece and collet of the accused chuck, and has the same push-pull function, mode of operation, and got the same results except in degree of friction between the nose piece and the collet. Benjamin, Tr. 43; Cox, Tr. 400, 427, 428.

32. In the collet chuck defined in claim 3 of the patent in suit the nose ring 16 and antifriction bearing 17 are held in position in the nose piece assembly against dropping out, falling out, or becoming separated from the nose piece 6 while the assembly is removed from the collet, or during interchange of one collet for another, regardless of the position in which the nose piece assembly is placed. Deft.'s Ex. V, plaintiff's answer to defendant's interrogatory No. 56; deft.'s Ex. N, certified copy of file history and contents of patent in suit, pp. 19, 20, 21; Benjamin, Tr. 80 and 81; and Cox, Tr. 400, 427 and 428.

33. In defendant's accused collet chuck the thrust race washer and the roller thrust bearing are not retained in or assembled with the nose piece against dropping out, falling out, or becoming separated from the nose piece when it is removed from the collet or during interchange of one collet for another; but, on the contrary, the washer and bearing are free to drop out of the nose piece for inspection and cleaning whenever the nose piece and collet are separated as is necessary to change collets. Benjamin, Tr. 84; Cox, Tr. 400, 425–430.

34. Defendant's accused collet chuck does not have a "nose piece assembly" as defined in the claim 1 portion of claim 3 of the patent in suit. Benjamin, Tr. 84; Cox, Tr. 400 and 430.

35. Defendant's accused collet chuck has no part, element, or assembly which is the same or substantially the same as the nose piece assembly of the patent in suit in structure, function, mode of operation or results. Benjamin, Tr. 83 and 84; Cox, Tr. 400, 425–430. And see amendment to claim 1, file wrapper of patent in suit, deft.'s Ex. N, pp. 18, 19, 20 and 21.

36. Defendant's accused collet chuck, Ex. KK, with the Torrington antifriction thrust bearing removed, i. e. defendant's excused collet chuck, deft.'s Exs. W1 and PP, admittedly does not infringe the patent in suit. Deft.'s Ex. W, plaintiff's answer to defendant's request for admissions No. 17.

37. Defendant's accused collet chuck does not differ in function or mode of operation or coaction between the constituent parts from defendant's excused collet chuck. Lutz, Tr. 296 and 297.

38. Defendant's accused collet chuck does not differ in results from defendant's excused collet chuck, except as the grip on a tool or work piece is shown on deft.'s Ex. UU. Lutz, Tr. 297.

39. Plaintiff relied on the presence of the snap ring 12, which holds the nose piece assembly of the patent in suit assembled, to amend and distinguish claim 1 from the Patent Office Examiner's rejection thereof on the Stoner patent No. 2,346,706 (See deft.'s Ex. I), in view of the Benjamin patent No. 2,465,-837. File wrapper and contents of patent in suit, deft.'s Ex. N, pp. 18, 19, 20 and 21.

40. The Patent Office was not informed during the prosecution of the application for the patent in suit that the specific antifriction bearing illustrated therein and claimed in claim 3 was not Mr. Benjamin's invention, but was in fact a Torrington bearing which was old and well-known and available to the public prior to the alleged invention of the patent in suit. Benjamin, Tr. 112 and 113; and see plaintiff's answer to defendant's interrogatory No. 112.

41. The claim 3 in issue is a dependent claim and includes all of the limitations of the independent claim 1 from which it depends, and specifies that the antifriction thrust bearing called for in claim 1 is a roller thrust bearing having radially extending cylindrical rollers that are in direct rolling engagement with the plane faces of the nose ring and the nose piece.

42. The term "roller thrust bearing" as found in claim 3 relates to an old and notoriously well-known bearing whether patented or not.

43. The "roller thrust bearing" defined in said claim 3 is an old and well-known type of bearing known for fifty years or longer, and there was no need for plaintiff during the prosecution of the application for patent in the U. S. Patent Office to draw the attention of the Examiner to the fact that such bearing was old.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this action.

2. Plaintiff is the owner of the entire right, title and interest in and to the Benjamin patent No. 3,035,845 in suit.

3. The Benjamin patent in suit No. 3,035,845 is devoid of any presumption of validity.

4. Claim 3 is not entitled to any noticeable range of equivalents.

 5. Claim 3 of the patent in suit describes and comprises an old and exhausted combination in which but one element, the nose piece assembly of the old combination, has been modified or improved by the addition of Torrington roller thrust bearing. This did not make a new combination nor change the function or mode of operation of the old combination, and claim 3 is therefore invalid.

6. Claim 3 of the patent in suit describes and comprises an old combination in which but one element purports to be improved in but one respect, which however was not the invention of Mr. Milton Benjamin, but was in fact the invention or improvement of the Torrington Company, and therefore is invalid for lack of originality.

7. Claim 3 of the patent in suit is invalid under 35 U.S.C. § 103 because the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been, as it was in fact, obvious at the time the invention was made to persons having ordinary skill in the pertinent art.

8. The alleged invention of the Benjamin patent in suit supplied no long-felt want, nor did it solve any significant problem; at best it comprised no more than a new use for the prior Torrington needle thrust bearing with merely natural consequences. Therefore claim 3 of the patent in suit is invalid.

9. Claim 3 of the patent in suit is invalid under 35 U.S.C. § 102(a), (b) and (f).

10. Plaintiff has not carried its burden of proving infringement. The accused device does not comprise a mere reversal of parts of the patent in suit.

11. Claim 3 of the patent in suit has not been infringed by defendant's making, using or selling its accused collet chuck exemplified in plaintiff's Exs. 3, 4, 5 and 6 and defendant's Exs. KK, PP with Torrington thrust bearings, and FFF.

For the reasons herein stated, the Court finds patent No. 3,035,845 to be invalid and not infringed by defendant.

During the trial the defendant was permitted to amend its answer by adding to paragraph 9 thereof an allegation charging fraud and misrepresentation on the part of the patentee and the plaintiff in procuring the patent. Upon proof thereof, the defendant seeks an order for allowance of costs and reasonable attorney's fees. In support of its allegation the defendant has convincingly shown that the plaintiff's device employs as one of its elements the Torrington thrust bearing, and that in fact the patentee, in the course of his conception of the invention, did not invent the bearing described in claim 3. On the contrary, he admittedly directed his purchasing agent to ascertain if a bearing suitable to the patentee's purpose was available in the market, with the result that the purchasing agent procured the Torrington thrust bearing which was then inserted and has ever since been an element of the plaintiff's device. The defendant has further convincingly shown that the patentee did not disclose the use of the Torrington thrust bearing to the Patent Office.

 The issue before the Court is: Is the evidence offered by the defendant sufficient to entitle it to the relief sought? Attorney's fees may be allowed to the prevailing party only in an exceptional case and under extraordinary circumstances. An exceptional patent case in which the court is authorized to award reasonable attorney's fees to a prevailing party is one in which unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, makes it grossly unjust that the winner of the particular suit should be left to bear the burden of his counsel's fees.

A case in this District which disposes of the issue here presented is Cutting Room Appliances Corp. v. Weatherbee

Coats, Inc., 158 F.Supp. 231, wherein the Court held:

"In action to enjoin infringement of patent subsequently declared void because of anticipation by prior art, fact that party did not disclose to Patent Examiner the prior art was not of itself sufficient proof of fraud to warrant award of attorney fees to prevailing party." (Headnote 7.)

█ The defendant is not entitled to an award of attorney's fees.

The foregoing is adopted as the Court's findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

Let an appropriate order in conformity herewith be submitted.

## ON MOTIONS FOR AMENDMENT OF FINDINGS, NEW TRIAL AND ALTERATION OR AMENDMENT OF JUDGMENT.

█ Plaintiff has filed a motion for an order under Rule 52(b) of the Federal Rules of Civil Procedure amending 24 of the 43 findings of fact adopted by the Court in its memorandum of February 28, 1967.

It is obvious from a study of the proposed amendments that plaintiff is requesting the Court to make complete revisions or rewritings of its findings in such a manner that the amended findings sought are completely contrary to the original findings made by the Court. Essentially all the proposed amendments were previously embodied in proposed findings presented to and rejected by the Court at the close of the trial. The matters now proposed as amendments were carefully considered by the Court when plaintiff's proposed findings were previously presented and were deliberately not included in the Court's findings of fact.

Therefore plaintiff's motion for amendment of findings of fact will be overruled.

█ Plaintiff has also moved pursuant to Rule 59(e) of the Federal Rules of Civil Procedure for alteration or amendment of the Court's judgment. Plaintiff has not set out the alterations or amendments it desires. It appears, however, from the grounds of the motion and from the arguments contained in the brief of counsel accompanying the motion, that plaintiff is presenting substantially the same contentions that were made in support of its Rule 52(b) motion, and that plaintiff is seeking a complete reversal of the Court's judgment. Such is not the purpose of the Rules relied upon.

Plaintiff's motion for alteration or amendment of judgment will be overruled.

█ Plaintiff has moved pursuant to Rule 59(a) of the Federal Rules of Civil Procedure for an order granting a new trial on the following ground:

"The evidence is insufficient to support the conclusion that claim 3 of the Benjamin patent in suit 3,035,845 is invalid under 35 U.S.C. 103."

In support of its motion for a new trial plaintiff argues that the Court relied solely on the testimony of the witness Norman Paquin and was misled by that testimony. Plaintiff appears to take the position that the Court did not properly determine the level of ordinary skill in the pertinent art because, according to plaintiff's argument, the Court did not find that Paquin made a patentable invention when he suggested using the Torrington bearing in the Barksdale valve.

Plaintiff's contention is patently in error as is demonstrated by the other evidence introduced at the trial and as reflected in the Court's findings. The Court need not fragmentize the evidence and make extensive findings to negative every offer of proof which has failed to persuade it, nor must it make findings and conclusions to set forth the extent of its reliance upon the testimony of witnesses or its assessment of their credibility, or the weight given to such testimony in relation to other evidence introduced at the trial. The Court need only find

such ultimate facts as are necessary to reach a decision in the case and is not required to make findings encompassing each and every detailed dispute or disagreement asserted by counsel or appearing in the evidence. The thrust of the totality of plaintiff's motions is that the Court perform that unnecessary exercise. Moreover, in view of the other unchallenged evidence introduced at trial and considered by the Court in making its ultimate determination of invalidity, the granting of a new trial for the limited purpose proposed in plaintiff's brief would be to no avail, for no contrary judgment would be produced.

Plaintiff's motion for a new trial will be overruled.