**DANA CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 3:90CV7253.**

United States District Court, N.D. Ohio, W.D.

April 2, 1991.

On Motion to Amend May 22, 1991.

Eric R. Fox, Ivins, Phillips & Barker, Washington, D.C., for plaintiff.

Charles M. Greene, Dept. of Justice, Tax Div., Washington, D.C., Constance Ann Snyder, Office of the U.S. Atty., Toledo, Ohio, for defendant.

## OPINION AND ORDER

WALINSKI, Senior District Judge.

This cause is before the Court on cross motions for summary judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### Background

Plaintiff, Dana Corporation (Dana), has brought this action against defendant, United States of America (hereinafter referred to as the IRS), seeking the refund of penalties imposed on it pursuant to 26 U.S.C. § 6656(a) of the Internal Revenue Code. Section 6656(a) imposes a penalty on a taxpayer who fails to make timely deposits of any tax required to be deposited with an authorized government depository. Specifically, Dana was penalized for failing to timely deposit the proper amount of payroll taxes 11 times over a two year period, 1982–83. During those two years, Dana was receiving payroll information from over 40 different locations that used a variety of payroll periods and payment dates and depositing payroll taxes for more than 20,000 employees.

Employers with aggregate undeposited payroll taxes of $3,000.00 or more in an eighth-monthly period[1] are required to deposit such taxes in either a Federal Reserve Bank or an authorized financial institution within three banking days after the end of that particular eighth-monthly period. Treas.Reg. 31.6302(c)–1(a)(1)(i)(b). Because some employers may not be able to determine their exact tax liability and make the required deposit within three banking days after the end of a period, subdivision (1) creates a "safe harbor" for those employers who deposit "not less than 95 percent ... of the aggregate amount of the taxes with respect to wages paid during the period for which the deposit is made." Treas.Reg. 31.6302(c)–1(a)(1)(i)(b)(1) (the safe harbor provision). Each employer is also required to file a Form 941 every calendar quarter setting forth a summary of all employment taxes deposited during that quarter. Treas.Reg. 31–6011(a)–1 and 31–6011(a)–4.

This dispute centers around the interpretation of the safe harbor provision. Dana, pursuant to longstanding company practice, interpreted it to mean that the company had to deposit a total of 95% of its payroll tax liability from the first day of the calendar month to the end of the current eighth-monthly period to be protected against any penalties that could be imposed under § 6656(a). Thus, if Dana deposited 100% of its aggregate payroll taxes for one eighth-monthly period and 90% of its aggregate payroll taxes for the subsequent eighth-monthly period, Dana would not be liable for any penalties under § 6656(a) because it had deposited 95% of its payroll taxes over both periods.

The IRS argues that the 95% safe harbor provision applies to each eighth-monthly period individually. Under this interpretation, a company is liable for penalties under § 6656(a) each time an eighth-monthly period deposit is less than 95% of the aggregate payroll taxes due for that period. Thus, in the example above, Dana would be liable for a penalty under § 6656(a) for the eighth-monthly period that it deposited only 90% of its aggregate payroll taxes.

Using this interpretation, the IRS found that Dana had failed to deposit at least 95% of its aggregate payroll taxes for 11 eighth-monthly periods spanning 1982–83. Pursuant to that finding, the IRS assessed penalties against Dana in the amount of $455,005.65. Dana paid this penalty on December 1, 1989 and filed five separate claims for a refund on December 13, 1989. After the IRS denied those claims, Dana filed this lawsuit, seeking a refund. Both parties now move this Court for summary judgment, claiming that there are no genuine issues of material fact and that each is entitled to judgment as a matter of law. This case appears to be one of first impression; neither the Court nor the parties have been able to find any case law directly on point.

---

**1.** The IRS divides the month into eight periods for the purpose of determining payroll tax liabilities. These eighth-monthly periods are "the first three days of a calendar month, the 4th day through the 7th day of a calendar month, the 8th day through the 11th day of a calendar month, the 12th day through the 15th day of a calendar month, the 16th day through the 19th day of a calendar month, the 20th day through the 22nd day of a calendar month, the 23rd day through the 25th day of a calendar month [and] the portion of a calendar month following the 25th day of such month." Treas.Reg. 31.-6302(c)–1(a)(1)(i)(2).

## Discussion

Rule 56 Fed.R.Civ.P. directs the disposition of a motion for summary judgment. In relevant part, Rule 56(c) states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

■ The Court's function in ruling on a motion for summary judgment is to determine if any genuine issue of material fact exists for trial, not to resolve any factual issues, and to deny summary judgment if material facts are in dispute. *United States v. Articles of Device,* 527 F.2d 1008, 1011 (6th Cir.1976); *Tee–Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193, 1195 (6th Cir.1974). Further, "[i]n ruling on a motion for summary judgment, the evidence must be viewed in a light most favorable to the party opposing the motion." *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d.1319, 1324 (6th Cir.1983). To summarize, summary judgment is only appropriate when no genuine issue of material fact remains to be decided, and when the undisputed facts, viewed in a light most favorable to the non-moving party, entitle the movant to judgment as a matter of law. *Smith v. Pan Am World Airways,* 706 F.2d 771, 771 (6th Cir.1983).

■ A principle purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Rule 56(e) places responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does not permit such a decision. In relevant part the provision states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e). Rule 56(e) requires the non-moving party to go beyond pleadings and by affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553.

Dana advances two reasons why it is entitled to a refund of the penalties: (1) that Dana was in compliance with the IRS regulations either because its interpretation of the safe harbor provision is correct or because the safe harbor provision was ambiguous; and (2) that even if Dana was not in compliance, it is still not liable for the penalties because its failure to deposit the correct amount of payroll taxes was due to reasonable cause, not willful neglect. The IRS argues that Dana was not in compliance, the safe harbor provision is not ambiguous and that its failure to deposit the correct amount of payroll taxes was not due to reasonable cause.

■ The 1983 version of Treas.Reg. 31–6302(c)–1(a)(1)(i)(b) states in pertinent part that:

> if at the close of any eighth-monthly period the aggregate amount of undeposited taxes is $3,000 or more, the employer shall deposit the undeposited taxes in a Federal Reserve Bank or authorized financial institution within 3 banking days after the close of such eighth-monthly period. For purposes of determining the amount of undeposited taxes at the close of an eighth-monthly period, undeposited taxes with respect to wages paid during a prior eighth-monthly period shall not be taken into account if the employer has made a deposit with respect to such prior eighth-monthly period. An employer will be considered to have complied with the requirements of this subdivision (i)(b) for a deposit with

respect to the close of an eighth-monthly period if—

(1) His deposit is not less than 95 percent ... of the aggregate taxes with respect to wages paid during the period for which the deposit is made.

Dana argues that the word "period" as it is used in the safe harbor provision does not relate to the eighth-monthly period in which a deposit is to be made but to the period in which a Form 941 return is to be filed. In support of this position, Dana points to the fact that in subdivision (i)(b), each time the word "period" is used, it is preceded by the term "eighth-monthly". In the safe harbor provision however, the word "period" is not preceded by the words "eighth-monthly" but is followed by the words "for which the deposit is made". Also, subdivision (i)(b)(2) begins "[I]f such eighth-monthly period ..." Dana argues that this must mean that some "period" other than an eighth-monthly period is intended. Dana found this other "period" in Treas.Reg. 31–6302(c)–1(a)(3)(iii), the regulation pertaining to the filing of Form 941.[2] Because Dana always deposited 95% of its aggregate payroll taxes from the beginning of a quarter to the end of any current eighth-monthly period, Dana should not be penalized under § 6656(a).

Dana further argues that even if its interpretation is wrong, the safe harbor provision is ambiguous and Dana's interpretation is as reasonable as the IRS's interpretation. Because ambiguities in the tax laws are to be construed in favor of the taxpayer and against the IRS, *Gould v. Gould*, 245 U.S. 151, 153, 38 S.Ct. 53, 54, 62 L.Ed. 211 (1917); *Weingarden v. Comm'r.*, 825 F.2d 1027, 1029 (6th Cir.1987), Dana should not be held liable for the imposed penalties.

The IRS argues, and this Court agrees, that Dana's interpretation is incorrect and the safe harbor provision is not ambiguous. Subdivision (i)(b) deals entirely with when and how payroll taxes are to be deposited. Any time an employer's aggregate undeposited payroll taxes exceed $3,000 in an eighth-monthly period, a deposit equal to those undeposited payroll taxes must be made for that period. The only way to determine if an employer has complied with this requirement is to look at the amount actually deposited for that eighth-monthly period. If there were no safe harbor provision and an employer had not deposited 100% of the payroll taxes due, that employer would be penalized under § 6656(a). The employer would be liable for *each* eighth-monthly period in which 100% of the payroll taxes were not deposited. The safe harbor provision was created because a deposit must be made within three banking days after the end of an eighth-monthly period and employers may not be able to determine the exact amount of payroll taxes that must be deposited in that short period of time. Logically then, to meet the requirements of the safe harbor provision, just as to meet the requirements of subdivision (i)(b) if there were no safe harbor provision, an employer would have to deposit 95% of the payroll taxes for *each* period. The safe harbor provision's "period for which the deposit is made" has to be the period for which a deposit must be made. That is the only period that can be looked at to determine if an employer is in compliance with the payroll tax deposit requirements.

Additional support for this conclusion is found in the remainder of subdivision (i)(b)(2) and in the language of the regulation Dana chose for its interpretation. Subdivision (i)(b)(2) states that "[I]f such eighth-monthly period occurs in a month other than the last month for which a return is required to be filed (hereinafter in this subparagraph referred to as a return period) ..." If the IRS intended the safe harbor provision's "period for which the deposit is made" to be the return period contemplated in subdivision (i)(b)(2), it would have made reference to the return period in the safe harbor provision, not a subsequent provision.

---

**2.** Form 941 is used for the reporting of all eighth-monthly deposits made during a particular calendar quarter. One of its functions is to compute the employment taxes due from an employer for the period for which the return is filed.

Subdivision (i)(b)(2) goes on to explain that "[T]he excess (if any) of a deposit over the actual taxes for a deposit period shall be applied in order of time to each of the employer's succeeding deposits with respect to the same return period." There can be no question that here the "deposit period" is the eighth-monthly period, even though the words "deposit period" are not preceded by the words "eighth-monthly".

There is nothing in subdivision (i)(b) which would lead someone to look at Treas. Reg. 31–6302(c)–1(a)(3)(iii) for a definition of the safe harbor provision's "period for which the deposit is made". Treas.Reg. 31–6302(c)–1(a)(3)(iii) states in relevant part that "[E]ach employer making *deposits* pursuant to this section shall report on the return for the period with respect to which such *deposits* are made information regarding such *deposits*." (emphasis added). Given that a return must be filed every calendar quarter, each such return should contain information on 24 eighth-monthly deposits. The safe harbor provision's "period for which the deposit [singular] is made" cannot be equivalent to the "period for which an employer must report 'information regarding such deposits [plural]' ".

■ Given that this Court finds that Dana was not in compliance with the IRS regulations, Dana still may not be liable for a penalty under § 6656(a) if its failure to deposit the correct amount of payroll taxes was due to reasonable cause and not willful neglect. 26 U.S.C. § 6656(a). The Supreme Court, in *United States v. Boyle,* 469 U.S. 241, 245, 105 S.Ct. 687, 689, 83 L.Ed.2d 622 (1985), has held that "[T]o escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.' " Willful neglect is defined as "a conscious intentional failure or reckless indifference." *Id.* Reasonable cause is defined as "ordinary business care and prudence." *Id.* at 246, 105 S.Ct. at 690.

Dana is a large, decentralized corporation, currently having 110 locations with different pay periods and payment dates reporting payroll information to corporate headquarters three times per month. Because Dana is required to deposit payroll taxes eight times a month and only receives reports three times per month, it must estimate its payroll tax liability six times per month to comply with deposit regulations. Its Manager of Payroll and Excise Taxes, Lawrence Reineke (Reineke) is a professional tax accountant with a bachelor's degree in accounting. He has been responsible for Dana's payroll taxes since 1976, being trained in that position by his predecessor, Chauncey McNelly (McNelly). Dana's policy was and is to deposit 100% of its payroll tax liability. Because this is not always possible due to the estimates, McNelly informed Reineke that as long as Dana had deposited at least 90%[3] of the accumulated payroll taxes due as of the close of any week in each quarter, it was in compliance with IRS regulations. According to Reineke, the IRS had never questioned Dana about its deposit practices prior to the 1986 audit, which caught the discrepancies at issue here.

In 1982–83, Reineke was receiving payroll information from over 40 locations and making payroll tax deposits for approximately 20,000 employees. He was aware that, prior to 1982, Dana had not met the safe harbor provision requirements as the IRS interprets them "on some occasions". On these occasions, Dana had met the safe harbor provision requirements as it interpreted them. Despite regular IRS audits, no IRS agent questioned Dana's deposit practices or informed them that they were not in compliance with the applicable regulations.

The IRS argues that Dana intentionally and willfully neglected to deposit the proper amounts of payroll taxes as part of its cash management philosophy, effectively using the safe harbor provision as an interest free loan. There is nothing in the record to support this contention. Reineke's affidavit clearly states that it always was and currently is Dana's policy to

---

**3.** In 1976, the safe harbor provision required that employers deposit only 90% of the required amount to be protected. This was amended as of January 1, 1982 to the present 95%.

deposit 100% of the required amount of payroll taxes due. Given Dana's large decentralized operations, the fact that six times per month Dana was forced to estimate its payroll tax deposit, and Dana's undisputed policy, this Court finds that Dana's failure to comply with the deposit regulations was not due to willful neglect.

■ Dana still must prove that its failure to comply was due to reasonable cause: i.e. that it exercised ordinary business care and prudence in interpreting the safe harbor provision the way it did. The IRS has regularly audited Dana's records, including its Forms 941. Prior to the 1986 audit, the IRS had never questioned or penalized Dana about its deposit practices, despite the fact that on "some occasions" prior to 1982 its deposits had failed to meet the safe harbor provision requirements. Dana argues that, given its longstanding practice and the fact that the IRS had never questioned or penalized it before, despite occasionally not meeting the requirements of the safe harbor provision as the IRS interpreted them, it had reasonable cause to believe its interpretation was correct. *See Gilmore v. United States,* 443 F.Supp. 91 (D.Md.1977); *United States v. Northumberland Ins. Co., Ltd.,* 521 F.Supp. 70 (D.N.J.1981); *Hugh Smith, Inc. v. Comm'r,* 8 T.C. 660 (1947), *aff'd per curiam* 173 F.2d 224 (6th Cir.1949); *Brown v. Comm'r,* T.C.Memo. 1989–89, 56 T.C.M. 1388 (1989); *Haynes v. Comm'r,* T.C. Memo. 1990–135, 59 T.C.M. 107 (1990). The Court agrees with this conclusion. A reasonable person, exercising ordinary business care and prudence, could interpret the IRS' inaction as confirmation that his interpretation was correct. As such, this Court finds that Dana's failure to deposit the correct amount of payroll tax was due to reasonable cause and should not be penalized.

■ Given the above determination, Dana is also entitled to interest at the overpayment rate pursuant to 26 U.S.C. § 6611, *see Salley v. United States,* 239 F.Supp. 161, 164 (S.D.Tex.1965), from the date it paid the penalties and costs pursuant to 26 U.S.C. § 7430.

Accordingly, it is

ORDERED that plaintiff motion for summary judgment is granted and judgment entered in its favor in the amount of $455,-005.65 plus interest at the overpayment rate specified in 26 U.S.C. § 6611 and costs pursuant to 26 U.S.C. § 7430.

FURTHER ORDERED that defendant's motion for summary judgment is denied.

### ON MOTION TO AMEND

This action is before the Court on defendant's, United States of America, motion to amend and plaintiff's, Dana Corporation, opposition thereto. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

On April 2, 1991, this Court entered summary judgment in favor of plaintiff in the amount of $455,005.65 plus interest for overpayment of taxes due to the imposition of penalties imposed on it pursuant to 26 U.S.C. § 6656(a) of the Internal Revenue Code. This Court found that Dana was not in compliance with IRS regulations but that they were not liable for a penalty under the above statute because its failure to deposit the correct amount of payroll taxes was due to reasonable cause and not willful neglect. The United States now asks this Court to reverse that judgment, still maintaining that plaintiff's failure was due to willful neglect and not reasonable cause. In the alternative, defendant asks this Court to amend that portion of the order line awarding plaintiff costs pursuant to 26 U.S.C. § 7430.

Defendant argues that plaintiff's failure to comply with IRS regulations in failing to meet its deposit requirements was due to willful neglect and not reasonable cause. This Court found, however, that in light of Dana's large decentralized operations, the fact that six times per month Dana was forced to estimate its payroll tax deposit, and Dana's undisputed policy to deposit 100% of the required amount of payroll taxes due, that Dana's failure to comply with the deposit regulations was not due to willful neglect.

■ Defendant is indeed attempting to obtain a complete reversal of our judgment

by offering essentially the same arguments presented in his initial motion for summary judgment. This is an inappropriate invocation of Fed.R.Civ.P. 59(e). *Erickson Tool Co. v. Balas Collet Co.*, 277 F.Supp. 226 (N.D.Ohio 1967), *aff'd* 404 F.2d 35 (6th Cir. 1968). The proper vehicle for relief at this point in time is an appeal to the United States Court of Appeals for the Sixth Circuit. *Blair v. Delta Air Lines, Inc.*, 344 F.Supp. 367 (S.D.Fla.1972), *aff'd per curiam*, 477 F.2d 564 (5th Cir.1973).

 In essence, the arguments put forth in this motion to amend provide this Court with no basis for altering its judgment. The arguments presented are essentially a regurgitation of those previously brought before this Court. Defendant takes issue with this Court's finding that Dana had an undisputed policy of attempting to maintain deposits at a 100% level during the relevant periods of time, arguing that such is not supported by the Reinecke affidavit. Defendant contends that there should be a trial of this allegedly disputed fact. This Court disagrees. In effect, defendant views the law in a light contrary to that of this Court. Everything in his motion to alter or amend either was argued or could have been argued before judgment was entered. Once again, defendant's proper recourse at this point in time is appeal to the Sixth Circuit. *See Blair, supra.* "Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor*, 444 F.Supp. 879 (E.D. Va.1977).

Defendant's second request is that the language in the judgment which provides that plaintiff may recover "costs pursuant to 26 U.S.C. § 7430" be changed to state that plaintiff may recover "costs pursuant to 28 U.S.C. §§ 1920 and 1924." This request is well taken. First, defendant is correct that plaintiff is not a party eligible for § 7430 relief. *See* 26 U.S.C. § 7430(c)(4)(A)(iii) and 28 U.S.C. § 2412(d)(2)(B). Also, it cannot be said that the position of the United States was not substantially justified and thus, relief un-

der § 7430 is not appropriate. *See* 26 U.S.C. § 7430(c)(4)(A)(i). Thus, any costs sought or granted by plaintiff would not come under the statute as given in this Court's original order.

Plaintiff agrees that it is not entitled to recover costs under § 7430 but states that since it has no intention of pursuing the recovery of costs, there is no need to amend the judgment. For the sake of clarity and simplicity, however, this Court will amend that portion of the order line to accurately reflect the subsequent rights of the parties.

It is therefore,

ORDERED that defendant's motion to amend judgment is granted in part, denied in part.

FURTHER ORDERED that that part of defendant's motion to amend seeking reversal of the summary judgment granted in favor of plaintiff is hereby denied.

FURTHER ORDERED that the portion of the order line beginning "costs pursuant to 26 U.S.C. § 7430" is hereby stricken and replaced with "costs pursuant to 28 U.S.C. §§ 1920 and 1924."