Andrew **FONTENOT**, Plaintiff,

v.

**MESA PETROLEUM CO.**, Defendant-
Third Party Plaintiff-Appellee,
Cross-Appellant, Cross-Appellee,

v.

**ROWANDRILL, INC.**, Defendant-Third
Party Plaintiff-Appellee,
Cross-Appellant, Cross-Appellee,

v.

**BRISTOW OFFSHORE HELICOPTERS,**
**INC.**, Third Party Defendant-Appellant,
Cross-Appellee.

No. 85–4060.

United States Court of Appeals,
Fifth Circuit.

June 13, 1986.

Howard Daigle, Jr., Stephen P. Hall, New Orleans, La., for Bristow Offshore Helicopters, Inc.

Edward J. Marquet, Voorhies & Labbe, Michael W. Adley, Juneau, Hill, Judice, Marquet, Hill & Adley, Lafayette, La., for Mesa Petroleum Co.

David A. Hurlburt, Hurlburt & Privat, Lafayette, La., for Rowandrill, Inc.

Before BROWN, JOHNSON, and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case vividly illustrates how, in the complicated offshore drilling environment with its intricate divisions of responsibility and countless contractors and subcontractors, a simple slip-and-fall can turn into a multiparty morass of contribution crossclaims, third- and fourth-party defendants, reciprocal indemnity agreements, and the ever-popular warranties of workmanlike performance. The plaintiff in this litigation has long since settled and departed but the other parties have chosen to remain on the field of battle to contest the appropriate share of the plaintiff's settlement to be borne by each of them. From the cast [1] of rig owner, rig charterer, and helicopter contractor, we have determined that, after all the dust and shouting have subsided,

---

1. As in a Russian novel, the characters cannot be identified too early nor too often:

Rowandrill: Rowandrill, Inc., owner of the drilling rig, the ROWAN–MIDLAND.

Mesa: Mesa Petroleum Company, time-charterer of the ROWAN–MIDLAND.

Bristow: Bristow Offshore Helicopters, Inc., helicopter contractor to Mesa.

responsibility for the plaintiff's award is to be borne primarily by the rig charterer, as provided by the terms of the owner-charterer contract, and also by the helicopter contractor, as provided by the terms of the charterer-helicopter contractor contract.

### Onshore Fueling and Offshore Refueling

On the night of March 5, 1980, a helicopter owned by Bristow Offshore Helicopters, Inc. (Bristow) was ferrying men and equipment to Service Equipment and Engineering Company (SEE) Rig No. 8. SEE Rig No. 8 is a fixed platform that was under contract to perform drilling operations off the coast of Louisiana for Mesa Petroleum Company (Mesa). Bristow was providing offshore helicopter transportation services pursuant to a contract with Mesa.

En route to Rig No. 8, the helicopter landed for refueling at the ROWAN–MIDLAND, a semi-submersible drilling rig owned by Rowandrill, Inc., and like SEE Rig No. 8, under contract to Mesa. As a safety precaution, the passengers were told to disembark before the helicopter was refueled. As they disembarked, they were warned that the heliport deck was slippery.

One of the helicopter passengers was Andrew Fontenot, a SEE employee, who was en route to his assigned job duties aboard Rig No. 8. Fontenot had devoted his last hours ashore to playing pool and drinking alcohol, activities generally denied to oilfield workers while offshore. Fontenot was still feeling the effects of the alcohol when the Bristow helicopter landed for refueling at the ROWAN–MIDLAND. When the helicopter passengers disembarked, Fontenot lost his balance on the slippery heliport surface and fell, injuring himself.

### A Sea/Airgoing Donnybrook

Fontenot brought suit against Rowandrill and later amended his complaint to add Mesa as a defendant. Rowandrill then asserted a cross-claim for contribution against Mesa, and Mesa responded in kind, seeking contribution from Rowandrill. Much later, Rowandrill asserted a third-party claim against Bristow, seeking contribution, or in the alternative, indemnity. Not wanting to be left out, Mesa also asserted a third-party demand seeking contractual indemnity from Bristow.

Four days before trial, Fontenot settled his claims against Rowandrill and Mesa for $125,000, of which Rowandrill paid $93,750 plus $2,200 in costs, and Mesa paid $31,250 plus $800 in costs. The plaintiff's early exit from the ring only slightly tarnished the card, however, because the various cross-claims and third-party claims of Mesa, Bristow, and Rowandrill remained to be contested. These claims included:

(1) Rowandrill's claim for contractual indemnity from Mesa;

(2) Mesa's claim for contractual indemnity from Rowandrill, based upon an express warranty of workmanlike performance (WWLP);

(3) Mesa's claim for indemnity from Bristow based upon an express indemnity obligation and an implied WWLP;

(4) Rowandrill's claim for indemnity from Bristow, based upon an implied WWLP;

(5) Cross-claims for contribution between Mesa and Rowandrill;

(6) Claims for contribution from Bristow by Mesa and Rowandrill.

### The Court Acts

Faced with the unenviable task of refereeing this multiparty donnybrook, the District Court without objection tried the third party actions for contribution and indemnity on depositions, documents, and trial memoranda only, without live testimony or oral argument. In its opinion, the District Court apportioned fault as follows:

| | |
|---|---|
| Rowandrill | 65% |
| Bristow | 20% |
| Fontenot | 15% |
| | |
| Total | 100% |

It found Rowandrill at fault due to the hazardous condition of the heliport, specifi-

cally the lack of nonskid paint; Fontenot at fault for being intoxicated before boarding the helicopter and failing to exercise due care after being warned of the slippery condition of the heliport; and Bristow at fault for discharging the passengers onto the hazardous heliport during refueling. Based on the finding of Bristow's 20% fault, the District Court held that Rowandrill was entitled to contribution from Bristow. Finding that Mesa was not even potentially liable to the plaintiff, the District Court also held that Mesa could not recover under an indemnity theory any of the money it paid to settle Fontenot's claim.

In addition, the District Court held that

 (1) Rowandrill was not entitled to contractual indemnity from Mesa;

 (2) Mesa was not entitled to indemnity from Rowandrill for the alleged breach of an express WWLP in the drilling contract;

 (3) Mesa was not entitled to receive from Bristow (i) contractual indemnity, nor (ii) indemnity based upon an implied contractual WWLP;

 (4) Rowandrill was not entitled to indemnity from Bristow based upon an implied contractual WWLP;

 (5) Neither Mesa nor Rowandrill was entitled to tort contribution from the other; and

 (6) Mesa was not entitled to tort contribution from Bristow.

The District Court also held open the record for additional evidence on attorney's fees, and, in its final judgment, ordered Bristow to reimburse Mesa for about $8,500 in attorney's fees and costs. Nobody was satisfied with this decision and everybody appeals.

Rowandrill asserts that the District Court erred (I) in holding that Rowandrill was not entitled to indemnity from Bristow, or alternatively, (II) in finding Bristow only 20% at fault for Fontenot's injuries, and (III) in holding that Rowandrill was not entitled to contractual indemnity from Mesa.

Mesa asserts that the District Court erred (I) in finding that Mesa was not po-

tentially liable to Fontenot and thus not entitled to reimbursement from Bristow of the amounts paid in settlement of Fontenot's claim, and (II) in denying Mesa's claim for indemnification from Rowandrill based upon a WWLP.

Finally, Bristow asserts that the District Court erred (I) in finding Bristow 20% at fault for Fontenot's injuries, and (II) in ordering Bristow to reimburse Mesa for its attorney's fees and costs.

We consider each of these assertions in turn.

*Rowandrill I: WWLP From Bristow*

■ Rowandrill attacks the District Court's holding that it was not entitled to indemnification from Bristow based upon an implied WWLP. The District Court held that a WWLP can exist only when the warrantor is performing some duty for the benefit of the party asserting the warranty. Since Bristow was performing no services for Rowandrill on March 5, 1980, the night Fontenot was injured, no WWLP could arise in favor of Rowandrill. The District Court also questioned whether the WWLP was available to a vessel owner such as Rowandrill when the injured person was not a seaman, either bluewater or vicarious, to whom was owed the warranty of seaworthiness. *See Whisenant v. Brewster-Bartle Offshore Co.,* 446 F.2d 394, 403 n. 31 (5th Cir.1971) (*Ryan* doctrine requires three elements, one of which is that injured party is a seaman of some type).

Rowandrill contends that since Bristow routinely provided transportation services for Rowandrill, even if it was not doing so on the night of Fontenot's injury. Bristow's helicopter could be "loosely likened to a crewboat 'standing by'" which would be sufficient to fall within a broad definition of "services." Rowandrill further asserts that, while the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) denied the availability of the WWLP as a remedy in certain situations, the WWLP survives for other situations including the present case.

We can assume without deciding that, at least for some limited purposes, the WWLP does survive the 1972 LHWCA amendments. The 1972 amendments abrogated in the stevedore context the *Ryan* doctrine which had sprung up heroically to rescue shipowners from the Scylla of absolute unseaworthiness liability and the Charybdis of suits brought by negligent stevedores. *See Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). When the 1972 amendments replaced the shipowner's unseaworthiness liability with a negligence-based standard, it also eliminated the now-unnecessary shipowner's indemnification remedy against stevedore-employers.

Our post-1972 amendments cases have recognized that the WWLP survives—albeit in "withered" form—in a few situations. We have attempted to confine application of the doctrine to situations involving independent contractors on unseaworthy drilling barges, although it occasionally has surfaced in ship repair cases, *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401 (5th Cir.), *cert. denied sub nom. Sentry Ins. Co. v. Todd Shipyards Corp.*, 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982); *Parfait v. Jahncke Serv., Inc.*, 484 F.2d 296 (5th Cir.1973), *cert. denied sub nom. Ruppel v. Travelers Indem. Co.*, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974), various offshore contracting contexts, *see Whisenant v. Brewster-Bartle Offshore Co.*, 446 F.2d 394 (5th Cir.1971) (drill pipe testing contractor), and a towing case, *Stevens v. East-West Towing Co.*, 649 F.2d 1104, 1108–09 (5th Cir. 1981), *cert. denied sub nom. East-West Towing Co. v. Avondale Shipyards, Inc.*, 454 U.S. 1145, 102 S.Ct. 1007, 71 L.Ed.2d 298 (1982), *strongly questioned in Hercules, Inc. v. Stevens Shipping Co.*, 698 F.2d 726, 737 n. 25 (5th Cir.1983) (en banc) (criticizing application of WWLP to towing accident in *East-West Towing* as contrary to long-established case law).

Even if we were inclined to apply the WWLP to this case, however, we still could not because a crucial element is lacking. The WWLP does not arise unless the putative warrantor is performing some type of service for the party asserting the warranty.

> Although we have extended the [*Ryan* ] doctrine to non-stevedore maritime contractors in limited circumstances, the reach of that doctrine has never encompassed a situation where no warranty, express or implied, has been given by the alleged indemnitor.... It is implicit in the "warranty of workmanlike performance" that the warrantor is performing some type of duty for the benefit of the party to whom the warranty is made. There must, of course, be a warranty in order to have a breach thereof.

*Thibodeaux v. Texas E. Transmission Corp.*, 548 F.2d 581, 584 (5th Cir.1977) (footnotes omitted).

As the District Court correctly observed, there is no basis in this case for implying a WWLP in Rowandrill's favor. On the night of Fontenot's injury, Bristow was not providing services for Rowandrill, it was providing services for Mesa. Even on those occasions when Bristow did transport Rowandrill personnel and equipment to and from the ROWAN–MIDLAND, it was performing those services for Mesa. If anything, it was Rowandrill who provided services to Bristow by allowing the use of the ROWAN–MIDLAND's heliport for a refueling stop. We therefore affirm the District Court in denying to Rowandrill indemnity from Bristow.

*Rowandrill II: Bristow's 20% Too Low*

[redacted] Rowandrill, appealing from the District Court's assignment to Bristow of 20% of the fault for Fontenot's injury, urges that Bristow was at least 75% at fault for the injury since Bristow was the "actively negligent helicopter company" and Rowandrill was merely the "situational helipad owner."

We reject Rowandrill's characterization of its role in Fontenot's injury. "Where a tortfeasor's own acts and omissions help create the unsafe work place, its negligence undoubtedly is active." *Culver v.*

*Slater Boat Co.*, 644 F.2d 460, 466 (5th Cir.1981) (citing cases), *modified*, 688 F.2d 280 (1982), *rev'd on other grounds*, 722 F.2d 114 (1983), *cert. denied sub nom. St. Paul Fire & Marine Ins. Co. v. Culver*, (*en banc*), ⸺ U.S. ⸺, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984). It was Rowandrill who maintained and operated the heliport in a hazardous condition, knowing that it would be used by its own employees as well as by others. Its role cannot be described as "passive" or "situational." Even if we were inclined to accept Rowandrill's self-characterization as "passive," however, the result would be unchanged. We review the District Court's findings of fact under a "clearly erroneous" standard. F.R.Civ.P. 52(a). Rowandrill's mere assertion that its negligence is passive compared to Bristow's [2] has not convinced us that the District Court's assignment of 20% fault to Bristow is clearly erroneous.

### Rowandrill III: No Indemnity from Mesa

Rowandrill appeals from the District Court's holding that Rowandrill was not entitled to contractual defense and indemnity from Mesa. Paragraph 9(f)(2) of the Mesa-Rowandrill contract provided that

[Mesa] agrees to protect, defend, indemnify and save [Rowandrill] from and against all claims, demands and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party, arising in connection herewith in favor of [Mesa]'s employees, [Mesa]'s contractors or their employees

other than [Rowandrill's employees or its subcontractors or their employees] on account of bodily injury, death or damage to property.[3]

In denying indemnity to Rowandrill under this provision, the District Court held that Fontenot's claim was not one "arising in connection herewith" because the use of the heliport was only incidental to the business of drilling a well or wells, the stated purpose of the contract. The District Court also held that Fontenot was not one of the persons contemplated by the phrase "[Mesa]'s employees, [Mesa]'s contractors or their employees." Rowandrill asserts on appeal that the District Court too narrowly construed both phrases and should have given effect to the indemnity clause.

The District Court opinion is silent about the appropriate law to be employed in construing the contract. Therefore, at the outset of our quest for contractual meaning,[4] we must select the proper beacon to steer by. If the Mesa-Rowandrill contract is a maritime contract, then maritime law, not state law, must guide us. *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge*, 424 F.2d 684, 691 (5th Cir.), *cert. denied sub nom. Ocean Drilling & Exploration Co. v. Signal Oil & Gas Co.*, 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970).

■ Although it is not always easy to determine whether a particular contract is a maritime contract, we need not anguish long over the nature of the Mesa-Rowandrill agreement. "In order that [maritime] character should attach [to a contract],

**2.** The active/passive negligence distinction occasionally has been employed to determine, as between joint tortfeasors with different degrees of culpability, which is owed contribution from the other. The distinction, however, is not the gauge to be employed in assigning percentages of comparative fault. "[T]he rule that a passive tortfeasor is entitled to indemnity from an active tortfeasor may be held inapplicable after the principle of comparative fault has been adopted." W. Prosser & W. Keeton, Torts § 51 (5th ed. 1984).

**3.** Under a similar clause, paragraph 9(f)(1), Rowandrill agreed to indemnify Mesa for injuries

sustained by Rowandrill personnel, contractors, and property. This type of mutual indemnity provision is precisely the type envisioned in and sanctioned by the 1984 amendments to the Longshoremen's and Harbor Workers' Compensation Act. *See* 33 U.S.C. § 905(c); *see also Blanks v. Murco Drilling Corp.*, 766 F.2d 891, 893–95 (5th Cir.1985) (discussing mutual indemnity provisions).

**4.** Interpretation of the terms of the contract, including indemnity clauses, is a matter of law reviewable *de novo* on appeal. *Kemp v. Gulf Oil Corp.*, 745 F.2d 921, 924 (5th Cir.1984).

there must be present a direct and proximate juridicial link between the contract and the operation of the ship, its navigation or its management afloat...." 1 Benedict on Admiralty § 183 (7th ed. 1985). A charter party is a classic example of a maritime contract. *See Clem Perrin Marine Towing, Inc. v. Panama Canal Co.*, 730 F.2d 186, 188 (5th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984). We therefore hold that, as a charter agreement for a vessel,[5] the Mesa-Rowandrill contract is a maritime contract and the indemnity clauses which it contains are to be construed according to maritime law. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir.1981); *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge*, 424 F.2d 684, 691 (5th Cir.), *cert. denied sub nom. Ocean Drilling & Exploration Co. v. Signal Oil & Gas Co.*, 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970).

▮ Under federal maritime law, [a] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.

*Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir.1981). The contract should be read as whole, and a court should not look beyond the written language of the contract to determine the intent of the

parties unless the disputed language is ambiguous. *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir.1984); *Corbitt*, 654 F.2d at 332–33; *Hicks v. Ocean Drilling & Exploration Co.*, 512 F.2d 817, 825 (5th Cir.1975), *cert. denied sub nom. H.B. Buster Hughes, Inc. v. Ocean Drilling & Exploration Co.*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976).

Under a long line of Fifth Circuit decisions, we have broadly construed language identical or similar to the "arising in connection herewith" language in the Mesa-Rowandrill indemnity agreement to unambiguously encompass all activities reasonably incident or anticipated by the principal activity of the contract.[6] We held in *Hobbs v. Teledyne Movible Offshore, Inc.*, 632 F.2d 1238, 1241 (5th Cir.1980), that an injury sustained by a contractor's employee while being transported by a crane from an offshore drilling rig to a crew boat was an injury "arising from Contractor's performance" of its drilling services contract. In *Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817 (5th Cir.1975), *cert. denied sub nom. H.B. Buster Hughes, Inc. v. Ocean Drilling and Exploration Co.*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976), one of the subcontractor's roustabouts was injured when the contractor pumped ballast out of submerged tank. We held that the injury occurred "in connection with the ... services to be rendered ... under this contract" clause of the indemnity agreement even though the activity causing the injury was not related to the subcontractor's duties, even though the injury occurred outside the premises described by the subcontractor's work orders,

---

5. The contract provided that Rowandrill would furnish to Mesa the semi-submersible drilling unit ROWAN–MIDLAND, indisputably a vessel, for six months and any mutually agreeable extension of time.

6. The *Dickerson* and *Stephens* cases *infra* were construing indemnity provisions under Louisiana law, not under the maritime law. The standard under Louisiana law, however, is for most purposes substantially identical to the standard under maritime law. *See Ducre v. Executive Officers*, 752 F.2d 976, 987 n. 26 (5th Cir.1985); *Weathersby v. Conoco Oil Co.*, 752

F.2d 953, 955 (5th Cir.1984); *Day v. Ocean Drilling & Exploration Co.*, 353 F.Supp. 1350, 1352–53 (E.D.La.1973). Although Louisiana generally strictly construes the language contained in indemnity agreements, it lends a broader construction to such phrases as "in connection with." *See Poole v. Ocean Drilling & Exploration Co.*, 439 So.2d 510, 512 (La.App.) (indemnity phrase "in connection with" means "being related to or associated with, but not the primary or only purpose of"), *writ denied,* 443 So.2d 590 (La.1983).

and even though the subcontractor was not performing services at the time of the injury. 512 F.2d at 824–25. An independent contractor-welder caused a tank of oil and gas condensate to explode, killing a number of employees of a drilling contractor, in *Dickerson v. Continental Oil Co.*, 449 F.2d 1209 (5th Cir.1971), *cert. denied sub nom. Insurance Co. v. Continental Oil Co.*, 405 U.S. 934, 92 S.Ct. 942, 30 L.Ed.2d 809 (1972). We held there that the decedents' claims were contemplated by the indemnity provision referring to claims "arising out of or incident to the work to be performed under this contract" even though the welding activity was unrelated to the drilling contractor's duties under the contract. 449 F.2d at 1221–22. Finally, although not deciding the issue and remanding for additional factfinding, we stated in *Stephens v. Chevron Oil Co.*, 517 F.2d 1123, 1124–26 (5th Cir.1975), that it

was "difficult to understand" how an injury sustained by an offshore contractor's employee while disembarking from a boat returning to shore from the offshore platform "would not have the necessary work connection to trigger the ['arising out of or connected with the performance by Contractor of services hereunder'] indemnity provision." [7]

■ The lesson of these cases is clear: where the presence of the injured person at the scene of the injury is attributable to or might reasonably be anticipated by his employment responsibilities, then his injuries occur "in connection with" those responsibilities. It is irrelevant that the person is not at that moment performing services or that the injury results from an activity not encompassed by the employer's contractual undertakings.[8]

---

7. In holding that Fontenot was not injured "in connection [ ]with" Rowandrill's contractual duties, the District Court relied on *Martin Wright Electric Co. v. W.R. Grimshaw Co.*, 419 F.2d 1381 (5th Cir.1969), *cert. denied,* 397 U.S. 1022, 90 S.Ct. 1263, 25 L.Ed.2d 532 (1970). In that Texas diversity case, one of the subcontractor's employees was fatally injured by the contractor's negligence while the employee was storing his tools during the last quarter-hour of the workday. We reversed the District Court's grant of summary judgment for the contractor-indemnitee. We held that, under a then-recent Texas appellate decision, the "in connection with" provision should be construed narrowly when the indemnitee's negligence which caused the injury had no relation to the work performed by the indemnitor under the subcontract. Had we held otherwise, the wholly negligent indemnitee would have been entitled under then-applicable Texas law to receive full indemnification from the indemnitor, whom the trial court found to be free of negligence.

*Martin Wright* construed Texas law and we are not bound by it when construing a maritime contract. We also believe that *Martin Wright* runs counter to more recent Fifth Circuit jurisprudence construing Texas law which lends a more expansive reading to "in connection with" and similar provisions in indemnity agreements. *See Kemp v. Gulf Oil Corp.*, 745 F.2d 921, 923–24 (5th Cir.1984) (Texas diversity case) (injuries sustained by contractor's employee while excavating a pit fell within the "in connection with" language of the indemnity clause even though the immediate cause of the injury was overflow of hot water and coke from near-

by unrelated "decoking" activity conducted by others).

8. *See Dickerson v. Continental Oil Co.*, 449 F.2d 1209, 1222 (5th Cir.1971) (construing Louisiana law) (indemnification agreement covered not only work done by the contractor but also work incident to or growing out of work done under the contract), *cert. denied sub nom. Insurance Co. v. Continental Oil Co.*, 405 U.S. 934, 92 S.Ct. 942, 30 L.Ed.2d 809 (1972). Any other result would deny the realities of maritime life, particularly life aboard drilling vessels. Numerous contractors, subcontractors and sub-subcontractors must work together in close quarters, all working toward a common goal but performing diverse tasks. An activity performed by Contractor A can easily injure Contractor B's employees. Off-duty or otherwise uninvolved employees are placed at risk by the myriad goings-on no less than the employees who actually perform the drilling, welding, cooking, and so on. Judicial attempts to determine which injuries occurred "in connection with" which activities are destined to produce unprincipled distinctions and cannot be expected to address the countless possibilities for injuries in the offshore workplace.

This is not to say that the parties cannot contract for a more precise definition of their indemnity obligations, e.g., by defining indemnity obligations according to which party's negligence caused the injury (to the extent permitted by law), or by limiting indemnity obligations to injuries incurred during working hours or during particularized operations, etc. However, the clear import of our decisions is that, absent more precise language in maritime

■ Consideration of the non-indemnity provisions of the Mesa-Rowandrill contract more than justify these conclusions. That contract provided that Rowandrill would "furnish a semi-submersible drilling unit to drill a well or wells in Gulf of Mexico waters offshore Texas or Louisiana ... and all auxiliary operations and services as detailed hereinafter in connection with such operations...." Rowandrill further agreed to provide the "personnel and equipment as detailed in the schedules attached." Schedule D, one of the attached schedules, described the specifications of the ROWAN–MIDLAND and specifically described the heliport as one of the rig's features. As part of the agreement, Mesa undertook to keep the heliport stocked with fuel and exercised control over which helicopters could use the facility. Under these facts, we can confidently state that the Mesa-Rowandrill contract contemplated the operation of a heliport aboard the ROWAN–MIDLAND and that Fontenot's injuries occurred "in connection [ ]with" the operation of that heliport.

We further hold that Fontenot was one of the persons included in the contract phrase "[Mesa]'s employees, [Mesa]'s contractors or their employees."[9] As an employee of SEE, a Mesa contractor, Fontenot falls within the class of persons described by paragraph 9(f)(2) of the Mesa-Rowandrill contract. His claims thus come within the literal terms of the contract and Mesa owes Rowandrill a duty of indemnification.

A policy analysis also supports this result. The purpose of the reciprocal indemnity agreement in the Mesa-Rowandrill contract, as it is in so many similar oilfield service contracts, is to divide the responsibility for personal injury/death among the many employers and contractors according to the identity of the injured employee rather than according to which party's fault or

negligence caused the injury. In effect, each party assumes the risk of the other's negligence and agrees to be responsible for injuries to its own employees no matter how, or by whom, caused.[10] The purpose of describing the classes of persons in the indemnification provisions is to define those employees for whom each party assumes the risk of injury.

Under this analysis, Fontenot's claims must be considered Mesa's responsibility. Mesa contracted for the services of SEE, Fontenot's employer. Mesa contracted for the services of Bristow to transport Fontenot to SEE's fixed offshore platform which was under contract to Mesa. Mesa authorized the Bristow helicopter to stop and refuel at the ROWAN–MIDLAND. As between Mesa and Rowandrill, Fontenot's presence aboard the ROWAN–MIDLAND was entirely attributable to Mesa.[11]

We therefore reverse the District Court and hold that, under the Mesa-Rowandrill contract, Mesa owes Rowandrill a duty of indemnification for the share of Fontenot's settlement paid by Rowandrill.

### Mesa I: Indemnity from Bristow

■ The District Court held that Mesa was not entitled to contractual indemnity from Bristow because Mesa could not establish that it was potentially liable to Fontenot when it settled the plaintiff's claim. Mesa argues that the District Court erred in not finding Mesa potentially liable and thus entitled to indemnification.

■ The general rule requires an indemnitee to show actual liability on his part to recover against an indemnitor, but we have held that a defendant need only show potential (rather than actual) liability to recover indemnity where either (1) the defendant tenders the defense of the action

contracts, we construe broadly "in connection with" and similar terms included in indemnification agreements.

9. *See* text at note 3 *supra; see also Blanks v. Murco Drilling Corp.,* 766 F.2d 891, 894 (5th Cir.1985).

10. *See* note 3 *supra.*

11. Had it been an employee of Rowandrill or one of Rowandrill's contractors who was injured on the heliport, then under the contractual indemnity scheme Rowandrill would have owed Mesa a duty of indemnification.

to the indemnitor; (2) the claim for indemnity is founded upon a judgment; (3) the defendant's claim is based on a written contract of insurance or indemnification.[12] *Terra Resources, Inc. v. Lake Charles Dredging & Towing, Inc.*, 695 F.2d 828, 832 (5th Cir.1983); *see also Tankrederiet Gefion A/S v. Hyman-Michaels Co.*, 406 F.2d 1039 (6th Cir.1969). In the present case, it is undisputed that Bristow contracted to indemnify Mesa. Therefore, Mesa needed only to establish that it was potentially, rather than actually, liable for Fontenot's injuries to be entitled to indemnification.

The District Court concluded that Mesa had failed to demonstrate that it was even potentially liable to Fontenot, because the evidence in the record indicated only that Mesa contracted for the drilling and helicopter transportation operations and that Mesa had a "company man" aboard the ROWAN–MIDLAND. On these facts, the District Court found no basis for recovery against Mesa. We hold that the District Court demanded too great a showing of potential liability from Mesa, and we reverse.

In determining whether an indemnity agreement governs a particular claim, the courts should look first to the language of the agreement. In this case, the Bristow-Mesa contract provided that

> [Bristow] shall be responsible for and shall indemnify and hold harmless [Mesa], and its personnel, servants, or agents from and against any and all claims, demand, proceedings, or causes of action in respect of any loss or damage to third party property or death or injury of third party personnel or death or injury to [Mesa's] or [Mesa's] other contractors' personnel, servants, or agents to the extent arising out of the performance of this Agreement by [Bristow] subject always to a limit of indemnity and hold harmless equivalent to amounts recoverable by [Bristow] under

the appropriate policies of insurance specified. . . .

By its terms, this provision requires only that Mesa establish that the claim arose "out of the performance of" the Mesa-Bristow contract in order to be entitled to indemnification. We have already held in *Rowandrill III supra* that, absent more precise evidence of intent, phrases such as "arising out of the performance of" are to be construed broadly to include all activities attributable to or reasonably anticipated by the principal contractual activity. We therefore hold that Fontenot's claim arose out of the performance of Bristow's contract with Mesa.

If the initial determination is made in favor of coverage, the courts should next consider whether the effect of the indemnification agreement violates statutory or common law doctrines. Under various doctrines, the courts are required to interpret indemnity agreements consistently with established social policies. For instance, indemnity agreements are usually interpreted not to provide for indemnification of a negligent party unless the agreement expressly so provides. *See United States v. Seckinger*, 397 U.S. 203, 211–13, 90 S.Ct. 880, 885–86, 25 L.Ed.2d 224, 232–34 (1970). In addition, certain statutes void indemnity provisions that violate public policy. *See, e.g.,* La.Rev.Stat.Ann. § 9:2780 (Louisiana's Oilfield Indemnity Act, voiding certain indemnity provisions in oilfield contracts as against public policy). The courts also should consider claims, if any, that the indemnity agreement is tainted by the same shortcomings used to void contracts generally, e.g., fraud, mistake, etc.

Where none of these considerations apply, however, as none do here, the courts should be wary of imposing additional restrictions on the parties' legitimate contractual bargain. The requirement that the indemnitee rigorously establish its potential liability to recover from the indemnitor may serve a valuable function when there

---

**12.** An additional requirement is that the amount of the settlement must be reasonable. *Wisconsin Barge Line, Inc. v. Barge Chem 300*, 546 F.2d 1125, 1127 (5th Cir.1977). None of the parties in this case has suggested that the settlement with Fontenot was unreasonable.

is no contractual relationship between the parties, but the existence of a valid indemnity agreement should ease the indemnitee's burden. A court confronted with such an agreement should insure that the claim was not frivolous, that the settlement was reasonable, that it was untainted by fraud or collusion, and that the indemnitee settled under a reasonable apprehension of liability.[13] But to require the indemnitee to go farther and establish with certainty its actual liability is to rewrite the parties' indemnity agreement.

The District Court held that the presence of a Mesa "company man" aboard the ROWAN–MIDLAND and Mesa's status as a time-charterer were insufficient bases to impart potential liability to Mesa. We believe that the standard of liability required of Mesa by the District Court approaches, if not satisfies, actual liability. In advance of the certainty of a judicial determination, however, Mesa was forced to evaluate its exposure cautiously. Mesa contracted with Rowandrill to provide for helicopter landing and refueling facilities on the ROWAN–MIDLAND, Mesa arranged for the refueling of Bristow helicopters, including keeping an adequate supply of fuel on board the ROWAN–MIDLAND, Mesa contracted for the Bristow flight in question, and Mesa authorized the Bristow helicopter to land aboard the ROWAN–MIDLAND. Mesa might have been held responsible for authorizing the refueling landing knowing of, or at least responsible for knowing of, the heliport's hazardous condition. On the facts, we cannot say that Mesa settled with Fontenot without a reasonable apprehension of its own liability. We hold, therefore, that the District Court should have given effect to the Mesa-Bristow indemnity agreement and should have ordered Bristow to indemnify Mesa for the portion of Fontenot's settlement paid by Mesa.[14]

## Mesa II: No Indemnity from Rowandrill

■ Mesa also appeals from the District Court's holding that Mesa was not entitled to contractual indemnity from Rowandrill based upon an express WWLP. In paragraph 8(a) of the Mesa-Rowandrill contract, Rowandrill warranted that it would "carry out all operations hereunder with due diligence, in a safe, workmanlike manner." The District Court concluded that the injury to Fontenot did not arise out of the performance of operations under the drilling contract, and thus fell outside Rowandrill's warranty which was restricted to "all operations hereunder."

In light of our resolution of Rowandrill's third issue on appeal (*see Rowandrill III supra*), we disagreed with the District Court on this point. We see no more reason to lend a niggardly interpretation to the words "all operations hereunder" than we did to the words "in connection herewith." The Mesa-Rowandrill contract expressly contemplated that the operation of the heliport would be one of the "operations hereunder," and Fontenot was injured as a result of that operation. We therefore hold that Rowandrill breached its express WWLP when it failed to provide a safe heliport surface.

This holding does not end our inquiry, however. Mesa seeks more than a judicial declaration that Rowandrill breached it warranty—it seeks indemnification from Rowandrill based on that breach. This we decline to do.

■ We have already held (*see Rowandrill III supra*) that, under the express indemnity provisions of the Mesa-Rowandrill contract, Mesa was obligated to indemnify Rowandrill for any claims aris-

---

**13.** *Compare Laird v. Shell Oil Co.,* 770 F.2d 508, 511–12 (5th Cir.1986) (under Louisiana law, indemnitor has no obligation to defend unless the complaint alleges facts which, if proven, would give rise to coverage under the indemnity agreement); *see also Knapp v. Chevron USA, Inc.,* 781 F.2d 1123, 1131 (5th Cir.1986).

**14.** It is well-established, however, that Bristow need not indemnify Mesa for the payments Mesa must make to Rowandrill in satisfaction of the indemnity agreement between Mesa and Rowandrill (*Rowandrill III supra*). *See Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 333–34 (5th Cir.1981).

ing from injuries to Mesa employees or employees of Mesa's contractors. When the contract contains an express indemnification provision, we will not imply a separate indemnification obligation arising out of a WWLP. *See Continental Casualty Co. v. Canadian Universal Ins. Co.*, 605 F.2d 1340, 1347 (5th Cir.1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980); *Evans v. Triple R Welding & Oil Field Maintenance Corp.*, 472 F.2d 713, 715–16 (5th Cir.1973); *D'Agosta v. Royal Netherlands S.S. Co.*, 301 F.2d 105, 107 (2d Cir.1962). Therefore, although we reject the District Court's reasoning that Fontenot's injury did not arise in connection with the drilling operations aboard the ROW-AN–MIDLAND, we affirm the District Court in holding that Mesa is not entitled to indemnify from Rowandrill.

### Bristow I: Twenty Percent Liability

Bristow appeals from the District Court's finding of fact that Bristow was 20% at fault for Fontenot's injuries. In a pretrial stipulation of fact, Bristow stated that company procedures "required that whenever helicopters were refueling hot (i.e., while the engine was still running), the passengers needed to disembark." The District Court based its assignment of fault to Bristow on this stipulation, stating that Bristow's 20% share arose from "discharging the passengers onto a hazardous heliport when it could have refueled with the engines off and thereby avoided the necessity of offloading the passengers."

After the District Court issued its opinion, Bristow moved to amend the findings of fact under F.R.Civ.P. 52(b). Bristow sought to introduce a portion of its operations manual which showed that *whenever* Bristow helicopters refueled, the passengers were required to disembark. Thus, Bristow maintained, once the helicopter landed on the ROWAN–MIDLAND for refueling, Fontenot was required to disembark whether the engine was left running or not. The District Court denied Bristow's motion to amend, although it did allow Bristow to introduce the operations

manual into the record for purposes of the appeal.

Bristow now argues that the District Court's findings of fact was based on an incorrect assumption and is clearly erroneous. It claims that no evidence supports the District Court's inference that the passengers could remain on board if the helicopter was refueled with the engine off.

■ Under Rule 52(b), a party may petition the trial court to amend its findings of fact within ten days of the entry of judgment. The purpose of motions to amend is to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence. *Evans, Inc. v. Tiffany & Co.*, 416 F.Supp. 224, 244 (N.D.Ill. 1976). Under the better view, a party may move to amend the findings of fact even if the modified or additional findings in effect reverse the judgment. "If the trial court has entered an erroneous judgment, it should correct it." 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 52.11[2] (2d ed. 1985).

■ This is not to say, however, that a motion to amend should be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits. *Evans, Inc. v. Tiffany & Co.*, 416 F.Supp. at 244; *Erickson Tool Co. v. Balas Collet Co.*, 277 F.Supp. 226, 234 (N.D.Ohio 1967), *aff'd*, 404 F.2d 35 (6th Cir.1968); *Minneapolis-Honeywell Regulator Co. v. Midwestern Instruments, Inc.*, 188 F.Supp. 248, 254 (N.D.Ill.1960), *aff'd*, 298 F.2d 36 (7th Cir. 1961). Except for motions to amend based on newly discovered evidence, the trial court is only required to amend its findings of fact based on evidence contained in the record. To do otherwise would defeat the compelling interest in the finality of litigation. *See United States Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 180 (3d Cir.1981) ("the trial record must support whatever additional findings of fact or conclusions of law a party seeks under Rule 52(b) or it is certainly not entitled to

them"), *cert. denied*, 456 U.S. 961, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982).

■ Under the circumstances of this case, we cannot fault the District Court for denying Bristow's motion. Each of the parties was given full opportunity to submit to the trial court that evidence which it thought was relevant to the determination of fault for Fontenot's injury. If Bristow believed that its cold refueling procedure was relevant, and if the proof was readily available—as it most certainly was, being in Bristow's own manual—it was incumbent upon Bristow to come forward with that evidence. Quite simply, the District Court drew an eminently reasonable inference from the evidence in the record and relied on that inference in making its findings of fact. That other evidence not in the record may negate the District Court's inference is beside the point. Blessed with the acuity of hindsight, Bristow may now realize that it did not make its initial case as compellingly as it might have, but it cannot charge the District Court with responsibility for that failure through this Rule 52(b) motion.

### Bristow II: Attorney's Fees

Our final port of call on this extended appellate voyage is Bristow's appeal from the District Court's holding that Bristow must reimburse Mesa for approximately $8,500 in attorney's fees and costs. Bristow claims that the entire award of attorney's fees should be reversed or, alternatively, that the judgment should be modified to allow recovery of only certain fees and costs.

In support of its claim that the entire award of attorney's fees should be reversed, Bristow argues that if it is not liable to indemnify Mesa under the contractual indemnification provision, then it is not liable for Mesa's attorney's fees either. Bristow concedes that if Mesa had been potentially liable to Fontenot but had been found to be not negligent, then Bristow would owe Mesa a duty of reimbursement

for defense costs. In light of our holding in *Mesa I supra* that Mesa is due indemnity from Bristow, Bristow's concession disposes of whether *any* indemnification for defense costs is owed: the only issue is for *which* defense costs Bristow must reimburse Mesa.

■ Bristow first argues that Mesa cannot recover any of the defense costs which were actually borne by Mesa's insurer, National Union Fire Insurance Company (National Union). Since Mesa did not bear those defense costs, there are no costs for Mesa to be reimbursed for, and National Union cannot take advantage of the Mesa-Bristow indemnity provision because the contract does not clearly reflect that intent. *See generally Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 527 F.Supp. 824, 835–36 (E.D.La.1981) (indemnity agreement must clearly reflect the intent to benefit a particular party), *aff'd*, 699 F.2d 240 (5th Cir.), *cert. denied sub nom. Rowan Cos., Inc. v. Marathon Pipeline Co.*, 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983).

Although the issue never has been addressed by the Texas courts,[15] we feel confident that our Texas brethren would side with the great weight of authority in rejecting Bristow's argument. *See Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 580 F.2d 1222, 1230 (4th Cir.1978) (predicting Maryland law); *Crosson v. N.V. Stoomvaart Mij "Nederland,"* 409 F.2d 865, 867–68 (2d Cir.1969) (maritime law); *North Central Airlines, Inc. v. City of Aberdeen*, 370 F.2d 129, 133–34 (8th Cir. 1966) (South Dakota law); *Safway Rental & Sales Co. v. Albina Engine & Mach. Works, Inc.*, 343 F.2d 129, 133–35 (10th Cir.1965) (Oklahoma law); *Lesmark, Inc. v. Pryce*, 334 F.2d 942, 945, 118 U.S.App.D.C. 194 (D.C.Cir.1964). To accept Bristow's argument and extend it to its next logical step would mean that an indemnitor could avoid its indemnification responsibility altogether through the fortuity of the indemni-

---

**15.** Under Section 13.2 of the Mesa-Bristow contract, it is to be construed under Texas law.

Thus, Bristow's citation of Louisiana authority on this issue is unavailing.

tee having obtained a liability insurance policy. The fact that any reimbursement that Mesa may obtain ultimately may go to Mesa's insurer is irrelevant to Bristow's contractual indemnity obligations.

Bristow next contests indemnity for any attorney's fees incurred by Mesa before Mesa formally tendered its defense to Bristow approximately two weeks before the scheduled trial date and approximately nine days before Mesa and Rowandrill reached a settlement with the plaintiff. Under Texas law, the disposition of this issue turns on the language of the indemnity agreement. Where the indemnity agreement does not require notice, the courts will not infer a notice requirement as a condition precedent to a right to recover on the indemnity contract. *United States Fidelity & Guar. Co. v. Jones,* 87 F.2d 346, 348 (5th Cir.1937); *Miner-Dederick Constr. Corp. v. Mid-County Rental Serv., Inc.,* 603 S.W.2d 193, 199–200 (Tex.1980); *Monical & Powell, Inc. v. Bechtel Corp.,* 404 S.W.2d 911, 915 (Tex.Civ.App.—Eastland 1966, *writ ref'd n.r.e.*). Since the indemnity provision in the Mesa-Bristow contract does not contain a notice requirement, this Court will not infer one. Furthermore, Bristow has not attempted to show that Mesa's attorney's fees were incurred as a result of bad faith, collusion, or fraud, nor has Bristow pointed to evidence that might work an estoppel against Mesa. We therefore hold that, by the terms of the contract, Bristow is not relieved from its indemnity obligation for attorney's fees incurred by Mesa before Mesa formally tendered its defense to Bristow.

Bristow also challenges its indemnification responsibility for attorney's fees incurred by Mesa in prosecuting and defending cross-claims and third-party claims and in establishing its right to indemnification. With respect to cross-claims and third-party claims, Texas law is again silent and we must resort to the established Texas practice of discerning the parties' intent from the language of the contract. *See* 14 Tex.Jur.3d, *Contribution and Indemnity* § 27 (1981). The relevant portion of the applicable indemnity provision in the Mesa-Bristow contract provided that

> [Bristow] shall be responsible for and shall indemnify and hold harmless [Mesa], and its personnel, servants, or agents from and against any and all claims, demand, proceedings, or causes of action in respect of any loss or damage to third party property or death or injury of third party personnel or death or injury to [Mesa's] or [Mesa's] other contractors' personnel, servants, or agents to the extent arising out of the performance of this Agreement by [Bristow]. . . .

Although it could certainly be argued that Mesa's cross-claims and third-party claims are "in respect of . . . injury to . . . [Mesa's] other contractors's personnel," such a construction runs counter to the emphasis in the clause which speaks of Bristow holding Mesa harmless "from and against" certain claims. If the parties intended the indemnity provision to include claims prosecuted by Mesa, that intent should be more discernable in the language chosen. We therefore hold that Bristow need not indemnify Mesa for the attorney's fees incurred by Mesa in prosecuting its cross-claims and third-party claims. With respect to the attorney's fees incurred by Mesa in establishing its right to indemnification, Mesa concedes that the District Court erred in awarding those fees. *See W.R. Grimshaw Co. v. Martin-Wright Elec. Co.,* 283 F.Supp. 628, 632 (W.D.Tex. 1968), *rev'd on other grounds,* 419 F.2d 1381 (5th Cir.1969), *cert. denied,* 397 U.S. 1022, 90 S.Ct. 1263, 25 L.Ed.2d 532 (1970).

Since we cannot discern from the record the amounts expended by Mesa in prosecuting its cross-claims and third-party claims or in establishing its entitlement to indemnification, we remand this issue to the District Court for determination of the appropriate sums.

### Conclusion

We affirm the District Court's denial of indemnity to Rowandrill from Bristow (Rowandrill I) and the denial of indemnity to

Mesa from Rowandrill (Mesa II). We affirm the District Court's finding that Bristow was 20% at fault for Fontenot's injury (Rowandrill II, Bristow I). We reverse the District Court's denial of indemnity to Rowandrill from Mesa (Rowandrill III) and the denial of indemnity to Mesa from Bristow (Mesa I). We also reverse the District Court's allowance of indemnity for attorney's fees and costs to Mesa from Bristow (Bristow II) inasmuch as these fees were incurred in prosecuting Mesa's cross-claims and third-party claims and in establishing Mesa's right to indemnification. We remand for determination of the appropriate attorney's fees due Mesa and for entry of judgment in accordance with this opinion.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.