# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 8, 2011

No. 10-31044

Lyle W. Cayce
Clerk

MICHAEL CHANNETTE, ET AL,

Plaintiffs

v.

NECHES GULF MARINE, INCORPORATED, and M/V GOLIAD,

Defendants-Third Party Plaintiffs - Appellants

v.

SENECA RESOURCES CORPORATION,

Third Party Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:09-CV-202

Before SMITH, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

Neches Gulf Marine, Inc. and the M/V GOLIAD appeal the district court's grant of summary judgment in favor of Seneca Resources Corporation. Because Seneca Resources Corporation has no duty to indemnify, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-31044

## FACTS AND PROCEDURAL HISTORY

This case arises from a personal injury action filed by Michael Channette against Evans Operating, LLP, Neches Gulf Marine, Inc., and the M/V GOLIAD, following a workplace accident that took place on May 10, 2008. The injury occurred when Channette was transferring via a personnel basket from the deck of the M/V GOLIAD to an offshore platform in the Gulf of Mexico.

At the time of the accident, Channette was employed by Roclan Services & Supply, Inc.; the crane used for the transfer was operated by an employee of Evans Operating, LLP; Neches Gulf Marine, Inc. was the owner and operator of the M/V GOLIAD, an offshore supply vessel; and Seneca Resources Corporation was the owner and operator of the offshore platform.

Neches Gulf Marine, Inc. and the M/V GOLIAD demanded defense and indemnity from Seneca Resources Corporation but were denied. Neches Gulf and the M/V GOLIAD filed a third-party complaint asserting that Seneca was contractually obligated to defend and indemnify them. They later sought summary judgment on that claim. Seneca filed a cross-motion for summary judgment and argued that no contract existed at the time of Channette's injuries requiring Seneca to defend or indemnify Neches Gulf and the M/V GOLIAD.

The district court granted Seneca's summary judgment motion. Neches Gulf and the M/V GOLIAD timely appealed.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*. *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001). Summary judgment is proper when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A district court's interpretation of a contract is a matter of law reviewed *de novo*. *City of Austin, TX v. Decker Coal Co.*, 701 F.2d 420, 425 (5th Cir. 1983).

No. 10-31044

"This broad standard of review includes the determination of whether the contract is ambiguous." *Id.* A maritime contract "should be read as whole, and a court should not look beyond the written language of the contract to determine the intent of the parties unless the disputed language is ambiguous." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986) (citations omitted). A contract is unambiguous if "its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation." *Chembulk Trading, LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n.6 (5th Cir. 2004) (citation omitted).

> [A] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.

*Fontenot*, 791 F.2d at 1214 (citation omitted).

Neches Gulf and the M/V GOLIAD identify two Master Time Charter Agreements from which the duty to defend and indemnify arise.

*I.      Neches-Seneca 1993 Time Charter Agreement*

Neches Gulf and Seneca entered into a Master Time Charter Agreement dated November 1, 1993. The Agreement defines Neches Gulf as "OWNER" and Seneca as "CHARTERER." Seneca agreed to defend, indemnify, and hold Neches Gulf harmless for any claims brought by or on behalf of employees of Seneca or employees of Seneca's subcontractors. This held true whether the claims were caused in whole or in part by the joint or concurrent negligence or strict liability, statutory or otherwise, of Neches Gulf or by the equipment of Neches Gulf. Channette was an employee of a Seneca subcontractor.

3

No. 10-31044

The most relevant provisions of that Agreement are those providing that the Agreement shall "govern each short Form Time Charter Agreement . . . entered into between" the parties "which incorporates this Master Agreement by reference." The Short Form identified by Neches Gulf and the M/V GOLIAD to support the demand for defense and indemnity specifically provided that the charter would begin on November 4, 1993, and end in "7 to 14 days." The 1993 Short Form stated that its terms ended on "completion of work." The incident for which indemnity is sought occurred in 2008.

Both sides produced parol evidence of the Agreement's meaning. The district court rejected that evidence because the unambiguous language of the 1993 Master Agreement and Short Form demonstrated the Agreement terminated in November 1993 upon completion of the original work.

On appeal, although Neches Gulf and the M/V GOLIAD agree the 1993 Master Agreement is "clear and unequivocal," they argue the district court erred in refusing to consider parol evidence. Had the court done so, they assert, it would have realized that the 1993 Master Agreement was considered by all parties still to be in effect and to provide obligations of defense and indemnity.

We disagree. Both the 1993 Master Agreement and Short Form expired under their own terms and were not in effect at the time of Channette's injury more than 14 years later. Because the Agreement's language is unambiguous, the district court properly excluded the parol evidence.

II.    *Gros-Seneca 2006 Time Charter Agreement*

Neches Gulf and the M/V GOLIAD also argued that Seneca owed defense and indemnity under a Master Time Charter Agreement entered into on September 11, 2006. That Agreement, though, provided that it was "by and between KEVIN GROS CONSULTING & MARINE SERVICES, INC. ([h]ereinafter referred to as 'OWNER') AND CHARTERER 'SENECA RESOURCES CORPORATION' . . . (hereinafter referred to as 'CHARTERER.')"

4

No. 10-31044

Subsequently, a Short Form "Charter Agreement" was signed by Gros on May 8, 2008, in which the M/V GOLIAD was chartered to work for Seneca. Gros was not the owner of the M/V GOLIAD. Instead, Gros acted as a broker for Neches Gulf in chartering the vessel to Seneca.[1] Neches Gulf and the M/V GOLIAD identified the following passage from the Gros-Seneca Time Charter Agreement in support of its position:

> This Master Agreement and the Short Form contemplated herein (Exhibit "A") . . . shall constitute the entire agreement between the parties of the charter of vessels by OWNER to CHARTERER, *in the absence of a separate time charter on a specific vessel and the terms and provisions hereof shall* ipso facto *apply to the charter of any vessel to CHARTERER by OWNER in the absence of any such separate time charter on a specific vessel.* The terms and provisions of this Master Agreement shall not, however, be applicable to the charter of any vessel upon which such a separate time charter is executed.

(emphasis added). Neches Gulf and the M/V GOLIAD maintain that because the Agreement's language "shall *ipso facto* apply to the charter of any vessel to CHARTERER [Seneca] by OWNER," indemnity is owed by Seneca to the actual owner of the vessel that Gros chartered to Seneca. Further, if the Agreement was not intended to apply to all vessels chartered by Gros, regardless of whether owned by Gros or by a third party, then the language was redundant and consequently meaningless.

Despite assertions that the Agreement was unambiguous, parol evidence was offered of the parties' intent in the form of the affidavit of Bryon Allemand, a former Vice-President and Chief Financial Officer for Gros. He understood that the Gros-Seneca Time Charter Agreement applied to all vessels chartered by Gros to Seneca, regardless of whether Gros was the actual owner or merely

---

[1] Neches Gulf does not claim that Kevin Gros Consulting & Marine Services, Inc. owed it any duty to defend or indemnify based on this arrangement, nor has a written agreement between Gros and Neches Gulf been identified in this appeal.

a broker of the vessel.  He stated the Agreement required the defense and indemnity provisions to "pass through" to the actual owner of the vessels brokered by Gros.

The district court again rejected consideration of parol evidence, finding no ambiguity in the pertinent provisions.  It relied in part on the fact that Neches Gulf was neither identified in nor a party to the Gros-Seneca Agreement. The court rejected the argument that the Agreement's language indicated that indemnity owed by Seneca was to the actual owner of the chartered vessel.  The Agreement covered only Seneca, Gros, and under Article 2 of the Agreement, "an affiliate of OWNER" (Gros) under certain circumstances.  The term "affiliate" is not defined in the Agreement.  Neches Gulf does not claim that it was Gros's affiliate, and thus that provision cannot apply.  The district court reasoned that if "OWNER" meant the actual owner of any vessel and not just Gros, there would be no reason to provide specifically that the "OWNER" under the Agreement may be Gros's affiliate.

Neches Gulf was neither the owner nor charterer as defined by the Agreement, though Neches Gulf certainly owned the M/V GOLIAD.  Beyond question, Neches Gulf, the owner of the chartered vessel, was itself not a named party or a signatory to the Gros-Seneca Master Time Charter.  Consequently, Neches Gulf cannot benefit from that agreement.

The question of whether the vessel itself was owed indemnity requires separate analysis.  The 2006 Gros-Seneca Agreement was to "govern the respective rights and duties of OWNER and CHARTERER." Neches Gulf is neither of those parties.  But the M/V GOLIAD was the subject of the 2008 charter by Gros and Seneca.  Under maritime law, the vessel itself can be – and here it was – sued and be made to pay up to its value for injuries occurring on it.  *See generally*, 1 THOMAS J. SCHOENBAUM, ADMIRALTY & MAR. LAW

No. 10-31044

§ 7-10 (4th ed. 2010). Our question is whether the 2006 Gros-Seneca Agreement applies to the use of the M/V GOLIAD in 2008.

The 2008 charter was governed by a one-page Charter Agreement between Gros and Seneca, executed two days before the injuries to Channette. Gros was chartering a vessel it did not own, but its right to charter is assumed in this case. That one-page agreement did not incorporate or mention the 2006 Master Time Charter Agreement between Gros and Seneca. The 2006 Master Time Charter Agreement specifically provided for a Short Form being later executed and incorporating the Master Time Charter Agreement by reference. Whatever the one-page 2008 Time Charter was, it was not a Short Form that explicitly incorporated the 2006 Agreement by reference.

Seneca argues the M/V GOLIAD is entitled to defense and indemnity even if Neches Gulf is not. The 2006 Master Time Charter Agreement states that Seneca "shall indemnify, defend and hold OWNER and the vessel harmless" from claims for personal injury arising from the charter of a vessel under the agreement. We have held that Neches Gulf is not entitled to defense and indemnity because it was not a party to the 2006 Agreement. Similarly, though the M/V GOLIAD is a vessel chartered (but not owned) by Gros to Seneca, the vessel was no more a party to the Gros-Seneca Agreement than was Neches Gulf. Neither the M/V GOLIAD as a vessel with liability under maritime law nor Neches Gulf is covered by the 2006 Agreement because neither was a party to it.

An indemnity contract is to be interpreted reasonably; "it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Fontenot*, 791 F.2d at 1214 (citation omitted). The only coverage for third parties to the Agreement that reasonably appears to have been within the contemplation of the

No. 10-31044

parties was coverage for affiliates of "OWNER" (Gros) that have entered into a Short Form with Seneca. Neches Gulf and the M/V GOLIAD do not fall into that category.

Summary judgment in favor of Seneca was proper.   AFFIRMED.